MICHAEL CLEVERINGA, Plaintiff, v. J.I. CASE COMPANY *et al.*, Defendants (J.I. Case Company, Third–Party Plaintiff-Appellant; Telecom Systems, Inc., *et al.*, Third–Party Defendants-Appellees).

First District (6th Division)   No. 1—88—3266

Opinion filed December 29, 1989.

Johnson, Cusack & Bell, Ltd., of Chicago (Thomas J. Andrews, Charles P. Rantis, and Thomas H. Fegan, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, David H. Levitt, and Bruce L. Carmen, of counsel), for appellee Telecom Systems, Inc.

Cassiday, Schade & Gloor, of Chicago (William J. Furey, Julie A. Teuscher, and Michael G. Thomas, of counsel), for appellee McLaughlin Manufacturing Company.

JUSTICE LaPORTA delivered the opinion of the court:

This action was brought by plaintiff, Michael Cleveringa, to recover for personal injuries sustained while using a boring machine in his employment by Telecom Systems, Inc. (Telecom). The trial court entered an order which provided that the settlement agreement between plaintiff and third–party defendants-appellees Telecom and McLaughlin Manufacturing Company (McLaughlin) was in good faith and dismissed all pending claims with the exception of plaintiff's claim against defendant and third–party plaintiff-appellant J.I. Case (Case). Case has appealed the trial court's order.

In his complaint, plaintiff alleged that Case, the manufacturer of

the boring machine, and McLaughlin, the manufacturer of the boring rods, were liable for his injuries under the theory of strict liability. Case and McLaughlin brought third-party actions against Telecom and filed contribution claims against each other. Home Insurance Company (Home), Telecom's workers' compensation insurance carrier, was subsequently allowed to intervene. During the proceedings, all parties engaged in settlement negotiations. A settlement agreement was ultimately signed by plaintiff, Telecom, and McLaughlin. In exchange for a $30,000 payment from McLaughlin as well as a cash payment and structured settlement valued at $1.07 million from Telecom, plaintiff released McLaughlin and Telecom from all further liability. Although Case had been involved in the negotiations, Case did not participate in the settlement agreement that was ultimately signed.

At the time of settlement, Home had paid plaintiff approximately $275,000 in workers' compensation benefits and held a lien in that amount against any settlement or judgment obtained by plaintiff. (Ill. Rev. Stat. 1987, ch. 48, par. 138.5(b).) The settlement agreement included a term which provided that Home agreed to waive enforcement of its workers' compensation lien against the parties to the agreement and funds received thereunder. Home expressly reserved the right to enforce its workers' compensation lien against funds received by plaintiff through settlement with or judgment against Case.

The parties to the settlement agreement brought a motion for a finding that the settlement agreement was in good faith. At the hearing on the motion, the trial court indicated that the reservation of the right to enforce the workers' compensation lien against funds received from Case was "in the nature of a loan agreement" and stated that the amount of any setoff should be determined after settlement with or judgment against Case. Upon consideration of the arguments of counsel, the trial court found that the settlement agreement was in good faith and dismissed all pending claims, with the exception of the plaintiff's claim against Case. Case has appealed the trial court's finding of a good-faith settlement and the dismissal of its claims for contribution against Telecom and McLaughlin.

Case initially claims that the settlement agreement should be set aside because the parties to the agreement acted in bad faith.

■■ Section 2 of the Contribution Among Joint Tortfeasors Act (Contribution Act) (Ill. Rev. Stat. 1987, ch. 70, par. 301 *et seq.*) provides that a tortfeasor to whom a release or covenant not to sue is given in good faith is discharged from all liability for any contribution to any other tortfeasor. (Ill. Rev. Stat. 1987, ch. 70, pars. 302(c), (d).) In determining whether the parties to a settlement agreement acted

in good faith, courts must take into account all of the circumstances surrounding the settlement. *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 499 N.E.2d 1373; *Ruffino v. Hinze* (1989), 181 Ill. App. 3d 827, 537 N.E.2d 871.

■ Where there has been a preliminary showing of good faith, a presumption of validity arises in favor of the settlement. (*Ruffino*, 181 Ill. App. 3d 827, 537 N.E.2d 871; *Wasmund v. Metropolitan Sanitary District* (1985), 135 Ill. App. 3d 926, 482 N.E.2d 351; *Barreto v. City of Waukegan* (1985), 133 Ill. App. 3d 119, 478 N.E.2d 581.) After a preliminary showing of good faith has been made, the burden shifts to the party opposing the settlement, who must prove by clear and convincing evidence that the settlement is invalid. *Ruffino*, 181 Ill. App. 3d 827, 537 N.E.2d 871; *McKanna v. Duo-Fast Corp.* (1987), 161 Ill. App. 3d 518, 515 N.E.2d 157; *O'Connor v. Pinto Trucking Service, Inc.* (1986), 149 Ill. App. 3d 911, 501 N.E.2d 263; *Wasmund*, 135 Ill. App. 3d 926, 482 N.E.2d 351; *Barreto*, 133 Ill. App. 3d 119, 478 N.E.2d 581.

In the instant case, the language of the settlement agreement clearly provided that Home agreed to waive enforcement of its workers' compensation lien only as to the parties and funds contemplated by the agreement. Home specifically reserved its right to enforce the lien against funds received from Case. Contrary to Case's assertions, Home never promised and plaintiff never obtained a waiver of enforcement of the lien against funds received from Case. The trial court was involved in the extensive settlement negotiations by the parties. McLaughlin contributed $30,000 in cash, and Telecom contributed cash and a structured settlement with a present value of $1.07 million. Although Case had been involved in the negotiations, it did not participate in the settlement agreement that was ultimately signed. Thus, plaintiff received a total of $1.1 million in exchange for his release of McLaughlin and Telecom from further liability.

■ The record contains no evidence of collusion or tortious or fraudulent conduct by the parties to the settlement agreement. (See *Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792.) Indeed, Case does not even allege that the agreement resulted from collusion, fraud, or tortious conduct. Rather, Case argues that the settlement was not in good faith and should be set aside merely because Case may be subject to a judgment which is greater than that which Case believed was appropriate for settlement. Such a possibility always exists when parties to litigation contemplate settlement. A party who refuses to settle a case on agreed terms always risks that he will be exposed to enhanced liability by that refusal. This

is the essence of settlement negotiations. A party either compromises in return for the certainty of a fixed result, or gambles that he will obtain a more favorable result by submitting the case to a jury. *Doellman v. Warner & Swasey Co.* (1986), 147 Ill. App. 3d 842, 498 N.E.2d 690.

Acceptance of Case's argument would place Telecom and McLaughlin in an untenable position. Telecom and McLaughlin would be precluded from settling with the plaintiff unless Case also agreed to settle and sanctioned the terms of the agreement. This would defeat the public policy favoring settlements and would allow one party to veto any settlement unless all parties had agreed on their respective liabilities. *Ellis v. E.W. Bliss & Co.* (1988), 173 Ill. App. 3d 779, 527 N.E.2d 1022; *Doellman*, 147 Ill. App. 3d 842, 498 N.E.2d 690.

■ Case also asserts that it could have settled with plaintiff but for Home's reservation of enforcement of the workers' compensation lien. As pointed out by Telecom in its brief, this claim is speculative, and the good faith of a settlement is not judged by the obstacles it creates for the nonsettling tortfeasor.

■ The trial court was aware of and considered all of the circumstances surrounding the settlement agreement. After a full hearing at which each party was represented by counsel, the court determined that the parties to the agreement had acted in good faith. The record reveals no evidence to the contrary, and Case presents none in its briefs. Consequently, the trial court did not abuse its discretion by finding that the settlement agreement was in good faith and by dismissing Case's contribution claims against Telecom and McLaughlin.

■ Case also contends that the settlement was in bad faith because the language referring to the workers' compensation lien amounts to "selective enforcement" of the lien. Relying on *Wilson v. The Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, Case claims that this portion of the agreement should be read as a complete waiver of the lien and that Case should receive the benefit of a setoff in the amount of the lien. Case's reliance on *Wilson* is, however misplaced. In *Wilson*, the plaintiff obtained a full waiver of enforcement of the workers' compensation lien. The supreme court ruled that the amount of the lien must be set off in order to preclude a double recovery by the plaintiff and to prevent nonsettling defendants from paying more than their *pro rata* share of the common liability.

In the case at bar, Home waived enforcement of the lien only against the parties and funds contemplated by the settlement agreement. Home never promised and plaintiff never obtained a waiver of enforcement of the lien against funds received from Case. Conse-

quently, there was no risk of a double recovery by plaintiff or of Case being required to pay more than its *pro rata* share of the common liability.

In its opening brief, Case asserted that the settlement agreement should be treated as a loan receipt agreement and should be held invalid under the Contribution Act (Ill. Rev. Stat. 1987, ch. 70, par. 301 *et seq.*). We note, however, that this assertion is inconsistent with the argument later presented by Case. Although Case apparently has abandoned this assertion by its failure to present it in the reply brief or at oral argument, we will consider it briefly here.

■ Loan receipt agreements have been found to exist where the benefit received by the plaintiff must be repaid to the defendant upon settlement with or judgment against a third party. (*Reese v. Chicago, Burlington & Quincy R.R. Co.* (1973), 55 Ill. 2d 356, 303 N.E.2d 382; *Schoonover v. International Harvester Co.* (1988), 171 Ill. App. 3d 882, 525 N.E.2d 1041.) Contrary to the argument presented by Case, the settlement agreement here was not a loan receipt agreement. As stated above, the language of the instant agreement clearly indicated that Home agreed to waive enforcement of its workers' compensation lien only as to the parties and funds contemplated by the agreement. Home specifically reserved its right to enforce the lien against funds received from Case. Plaintiff never obtained a waiver of enforcement of the lien against funds received from Case. Thus, the benefit received by plaintiff, monetary compensation and a waiver of enforcement of the lien against the parties and funds contemplated by the agreement, was to be retained by plaintiff and was not subject to repayment under any circumstance. Because Home never waived its right to enforce the lien against funds received from Case, Home's election to pursue the lien cannot be construed as a requirement that plaintiff repay a benefit received under the settlement agreement. Consequently, the trial court properly found that the agreement between plaintiff, Telecom, and McLaughlin was not a loan agreement.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

McNAMARA and BILANDIC, JJ., concur.