BRIAN K. HIGGINBOTTOM, Plaintiff, v. PILLSBURY COMPANY, Defendant and Third-Party Plaintiff-Appellant (Dennis Alexander, Defendant; Yale Enforcement Services, Inc., Third-Party Defendant-Appellee).

Fifth District No. 5—91—0426

Opinion filed July 16, 1992.

L. David Green, of Burroughs, Simpson, Hepler, Broom & MacDonald, of Edwardsville, for appellant.

James C. Cook, of Walker & Williams, P.C., of Belleville, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Defendant and third-party plaintiff, The Pillsbury Company (hereinafter Pillsbury), appeals from the May 15, 1991, order of the circuit court of St. Clair County, Illinois, dismissing with prejudice its third-party complaint against Yale Enforcement Services, Inc. (hereinafter Yale). Plaintiff, Brian K. Higginbottom, had filed the initial three-count complaint herein on November 2, 1989, seeking damages against Pillsbury in count I of the complaint, for negligent construction and maintenance of a guardhouse where he was injured while working as a security guard on November 26, 1988. Plaintiff also joined Dennis Alexander as a defendant, alleging that Alexander had negligently operated his motor vehicle and failed to keep it under control such that Alexander's vehicle had violently struck the guardhouse

within which plaintiff had been working on that date. Finally, plaintiff joined as a defendant under the Dramshop Act (Ill. Rev. Stat. 1987, ch. 43, par. 135) Mississippi Avenue, Inc., d/b/a/ Pop's Saloon & Eats, alleging that defendant Alexander had consumed alcoholic beverages at Pop's Saloon & Eats on November 26, 1988, causing him to become intoxicated, and that as a result of said intoxication Alexander's vehicle struck the guardhouse wherein plaintiff was working, causing plaintiff severe and permanent injury.

The record indicates that plaintiff had filed a separate workers' compensation claim against his employer, Yale, which was settled prior to the date on which Pillsbury filed its third-party complaint against Yale seeking contribution under the Contribution Act (Ill. Rev. Stat. 1989, ch. 70, par. 301 *et seq.*). The record also indicates that plaintiff settled the cause of action filed against defendant Mississippi Avenue, Inc., while the third-party complaint for contribution was pending.

Yale filed a motion to dismiss the third-party complaint pursuant to section 2—619 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—619), stating therein that the Illinois Supreme Court was presently considering the question of whether an employer could be held liable for contribution in an action instituted by its employee or whether the exclusive remedy was provided by the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, pars. 138.5(a), 138.11), citing *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155. Yale also filed a motion for settlement approval and for "good faith" finding, stating therein that plaintiff and his employer had entered into a settlement of plaintiff's workers' compensation claim on September 12, 1989. Yale attached to this motion copies of the settlement contract approved and certified by the State of Illinois Industrial Commission and settlement check in the amount of $12,135 made payable to plaintiff and his attorney. Yale requested that the court approve the settlement and find that the settlement had been given in good faith, as that term is used in section 2(c) of the Contribution Act (Ill. Rev. Stat. 1989, ch. 70, par. 302(c)), thus extinguishing any claims for contribution by third parties against Yale. Pillsbury filed a response in opposition to Yale's motion to dismiss, contending that an employer's immunity from suit in tort by its employee is not a bar to a claim for contribution against it by a defendant held liable to such plaintiff, citing *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 461 N.E.2d 382. Pillsbury also filed an objection to the approval of Yale's settlement with plaintiff on the workers' compensation claim and to the good-faith finding, attaching thereto the affidavit of Pillsbury's attorney which stated

that plaintiff's attorney had told affiant that a lien in the approximate amount of $40,000 for payments received under the workers' compensation claim would apply to any moneys received by plaintiff in the instant lawsuit.

Following argument by counsel for Yale and Pillsbury and the Illinois Supreme Court's decision filed April 24, 1991, in *Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 585 N.E.2d 1023, the circuit court entered its May 15, 1991, order dismissing Pillsbury's third-party complaint against Yale. The court found therein that Yale had responded to the third-party complaint seeking contribution by invoking the exclusive remedy provision of the Workers' Compensation Act and stating in its section 2—619 motion that the third-party action against it is barred by reason of its workers' compensation settlement with plaintiff. The court referred to the copy of the September 12, 1989, settlement which was filed of record, and the court noted that plaintiff's counsel had advised the court that the settlement had been fully consummated and that the employer's workers' compensation lien, which would apply to any monies received from the third-party plaintiff, had not been waived. The court found that in view of the supreme court's decision in *Kotecki*, Yale's liability for contribution in the third-party claim was limited to the total sum of the workers' compensation liability it paid to plaintiff, its employee. The court further found that because Yale had fully satisfied its workers' compensation liability pursuant to the lump sum settlement order approved September 12, 1989, it had also fully satisfied its liability for contribution under *Kotecki* and section 2(c) of the Contribution Act (Ill. Rev. Stat. 1989, ch. 70, par. 302). The court deferred to the findings and order of the Illinois Industrial Commission approving plaintiff's settlement with its employer and accordingly dismissed with prejudice Pillsbury's third-party complaint against Yale. The court further stated in its May 15, 1991, order, "there is no just reason to delay enforcement or appeal of this order," citing Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

■ ■ On appeal, brought pursuant to Supreme Court Rule 304(a), Pillsbury asks us to determine whether the trial court improperly dismissed its third-party complaint for contribution against Yale because there had been no "good faith" settlement for purposes of the Contribution Act. We initially note that the Contribution Act provides in pertinent part:

"Right of Contribution. (a) Except as otherwise provided in this Act, where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the

same wrongful death, there is a right of contribution among them, even though judgment has not been entered against any or all of them.

(b) The right of contribution exists only in favor of a tortfeasor who has paid more than his pro rata share of the common liability, and his total recovery is limited to the amount paid by him in excess of his pro rata share. No tortfeasor is liable to make contribution beyond his own pro rata share of the common liability." (Ill. Rev. Stat. 1989, ch. 70, pars. 302(a),(b).)

We also note that while an employer is immune from an action at law by an injured employee pursuant to sections 5(a) and 11 of the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, pars. 138.5(a), 138.11), the Illinois Supreme Court has held that under the Contribution Act the employer's immunity from a suit in tort by its employee as plaintiff is not a bar to a claim for contribution against it by a defendant held liable to such plaintiff. (*Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 14, 461 N.E.2d 382, 388.) The court explained in *Doyle* that because the potential for an employer's tort liability exists until such time as the statutory immunity defense is established, employers are subject to liability in tort for purposes of the Contribution Act wherein " ' "liability" is determined at the time of the injury out of which the right to contribution arises, and not at the time the action for contribution is brought.' " (*Doyle*, 101 Ill. 2d at 10-11, 461 N.E.2d at 387, quoting *Stephens v. McBride* (1983), 97 Ill. 2d 515, 520, 455 N.E.2d 54, 57.) The Illinois Supreme Court has recently ruled, as noted by the court below, that a third-party plaintiff may only seek contribution against an employer in an amount not greater than the workers' compensation liability of the third-party defendant/employer. (*Kotecki v. Cyclops Welding Corp.* (1991), 146 Ill. 2d 155, 166, 585 N.E.2d 1023, 1028.) In adopting the "Minnesota rule" announced in *Lambertson v. Cincinnati Corp.* (1977), 312 Minn. 114, 130, 257 N.W.2d 679, 689, our supreme court sought to reconcile conflicting portions of the Contribution Act and Workers' Compensation Act by limiting the amount of contribution of an employer to its liability under workers' compensation. Following *Kotecki*, Yale's liability for contribution to Pillsbury under the third-party complaint would have been limited to its liability to plaintiff under the Workers' Compensation Act.

Pillsbury argues that the trial court extended *Kotecki* beyond its holding by dismissing Pillsbury's third-party complaint for contribution on the basis that Yale had satisfied its workers' compensation liability. This clearly would have been error, for *Kotecki* reaffirmed the

holding of *Doyle* that an employer can be held liable for contribution to a third-party plaintiff held liable to a plaintiff/employee in a tort action, regardless of the Workers' Compensation Act. However, we believe Pillsbury has misinterpreted the holding of the trial court's May 15, 1991, order. The court stated in this order:

> "The court further finds that the employer, having fully satisfied its workers' compensation liability pursuant to the lump sum settlement and order approved September 12, 1989, has also fully satisfied its liability for contribution under *Kotecki, and section 2(c) of the Contribution Act.*" (Emphasis added.)

The court by specifically referencing section 2(c) of the Contribution Act recognized that Yale was seeking dismissal of the third-party action based on a good-faith settlement of the workers' compensation action with plaintiff, the contribution aspect of which is satisfied by way of the concomitant setoff of plaintiff's recovery from any nonsettling defendant. We also note that neither *Doyle* nor *Kotecki* involved a factual situation such as in the instant case where the workers' compensation liability had been settled and the third-party defendant/employer was seeking approval of the settlement, a "good faith" finding, and discharge of liability for contribution under section 2(d) of the Contribution Act.

The Contribution Act seeks both to apportion liability for tortious conduct among those liable for the resultant injuries and to encourage settlement of such cases. (*Doellman v. Warner & Swasey Co.* (1986), 147 Ill. App. 3d 842, 846, 498 N.E.2d 690, 694.) The only apparent requirement for application of the Contribution Act is that the plaintiff's recovery be based on the same injury to person or property. (*Yanan v. Ewing* (1990), 205 Ill. App. 3d 96, 99, 562 N.E.2d 1243, 1245.) The copy of the September 12, 1989, settlement contract indicates that plaintiff's workers' compensation claim was filed against Yale for injuries occurring on November 27, 1988, while plaintiff was within a guard station which was struck by an automobile, the same injuries alleged by plaintiff in his complaint against Pillsbury, Alexander and Mississippi Avenue, Inc., in the instant case. We find that the Contribution Act would apply to plaintiff's workers' compensation recovery.

■ When the Contribution Act does apply, a settlement between one tortfeasor and the plaintiff will result in an equal reduction or setoff in the amount of any judgment entered against a nonsettling tortfeasor. (*Yanan*, 205 Ill. App. 3d at 99, 562 N.E.2d at 1245; Ill. Rev. Stat. 1989, ch. 70, par. 302(c).) Moreover, a tortfeasor who settles with a claimant pursuant to section 2(c) of the Contribution Act is

discharged from all liability for any contribution to any other tort-feasor. (Ill. Rev. Stat. 1989, ch. 70, par. 302(d).) Section 2(c) of the Contribution Act provides as follows:

"(c) When a release or covenant not to sue or not to enforce judgment is *given in good faith* to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 70, par. 302(c).)

We also note numerous Illinois cases which support the proposition that a third-party defendant/employer from whom contribution is sought can make a good-faith settlement of a workers' compensation claim with the plaintiff/employee and thus be discharged from contribution liability to a nonsettling defendant. (See, *e.g., Wilson v. The Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 546 N.E.2d 524; *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, 520 N.E.2d 932; *Ellis v. E.W. Bliss & Co.* (1988), 173 Ill. App. 3d 779, 527 N.E.2d 1022.) Therefore, if the trial court in the instant case properly found that the September 12, 1989, settlement between Yale and plaintiff of plaintiff's workers' compensation claim had been "given in good faith" under section 2(c) of the Joint Tortfeasors Contribution Act, Yale would be discharged from liability for contribution to Pillsbury or any other tortfeasor and the court could properly have dismissed Pillsbury's third-party complaint against Yale for contribution.

Pillsbury does not argue on appeal that Yale is incapable of entering into a good-faith settlement directly with plaintiff in order to satisfy Yale's potential liability for contribution to Pillsbury. Pillsbury does argue, however, that as long as Yale maintains its right to assert the statutory workers' compensation lien, any such settlement cannot be considered to have been made in good faith. In the alternative, Pillsbury argues that it should be entitled to contribution as long as Yale is permitted to retain its workers' compensation lien. An employer, whether negligent or not, has a right to recover compensation payments paid to an injured employee under section 5(b) of the Workers' Compensation Act. (Ill. Rev. Stat. 1989, ch. 48, par. 138.5(b).) This so-called right of recoupment allows the employer to assert a lien upon any award, judgment or fund out of which such employee might be compensated from any such third party. (See Ill. Rev. Stat. 1989,

ch. 48, par. 138.5(b).) This section allows both the employer and employee to reach the true offender while preventing the employee from obtaining a double recovery. (*Langley v. J.L. Simmons Contracting Co.* (1987), 152 Ill. App. 3d 899, 905, 504 N.E.2d 1328, 1332.) The employer's reimbursement under this section of the Act is reduced, however, by the necessary expenses incurred by the employee in connection with such third-party action, and where the services of an attorney of the employee have contributed to the procurement by suit, settlement or otherwise of the proceeds out of which the employer is reimbursed, then in the absence of other agreement the employer shall pay the employee's attorney 25% of the gross amount of such reimbursement. (Ill. Rev. Stat. 1989, ch. 48, par. 138.5(b).) We also note that as long as the employer is subject to contribution to third parties, to the extent of his workers' compensation liability to plaintiff/employee according to *Kotecki*, the exercise of the employer's right of recoupment also ensures that the employer will not be paying twice.

Pillsbury argues that if Yale is allowed to discharge its contribution liability by way of section 2(d) of the Contribution Act and is permitted to recoup its workers' compensation payments out of any judgment or settlement plaintiff may recover from Pillsbury and the remaining defendants, Yale is receiving a windfall. Pillsbury also argues that a finding of good faith in a situation such as this, where the employer retains its workers' compensation lien, goes against one of the purposes of the Contribution Act, the encouragement of settlements. Pillsbury maintains that the remaining nonsettling defendants will be frustrated in their ability to settle with plaintiff in a situation such as this, because the employer who retains its lien has been dismissed from liability for contribution and therefore has no incentive to release that lien and so plaintiff will demand that any settlement also include whatever amount is necessary to satisfy the employer's lien.

Yale points out, on the other hand, that its settlement with plaintiff must be set off against any judgment plaintiff may recover against the remaining nonsettling defendants, pursuant to section 2(c) of the Contribution Act. (Ill. Rev. Stat. 1989, ch. 70, par. 302(c).) Pillsbury's potential net judgment liability by way of this setoff is therefore the functional equivalent of receiving contribution from Yale since Yale's contribution liability is limited to its workers' compensation liability pursuant to *Kotecki*. While Pillsbury argues that plaintiff is disadvantaged by having to reimburse Yale for the workers' compensation payments, Yale points out that plaintiff did not object to his employer's motions or to the circuit court's entry of the May 15,

1991, order. In any event, Yale argues, plaintiff's net judgment recovery would be approximately the same, with or without a waiver of Yale's workers' compensation lien, for if the lien were waived the value of the waiver to plaintiff would also have to be set off from any recovery plaintiff received from nonsettling defendants, citing *Wilson v. The Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 546 N.E.2d 524.

■ With these arguments in mind, we will now examine the propriety of the trial court's determination that the workers' compensation settlement between plaintiff and Yale was in good faith. The Contribution Act does not specifically define "good faith"; in determining whether an agreement was made in good faith, all of the surrounding circumstances must be considered. (*Wilson v. The Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 318, 546 N.E.2d 524, 529.) Moreover, the matter is largely left to the discretion of the trial court. (*Dixon*, 166 Ill. App. 3d at 751-52, 520 N.E.2d at 937.) However, once a preliminary showing of a good-faith settlement has been made, the burden shifts to the party challenging the settlement to establish that it was not made in good faith. (*Wilson*, 131 Ill. 2d at 318-19, 546 N.E.2d at 529.) The party opposing the settlement must prove by clear and convincing evidence that the settlement is invalid. (*Cleveringa v. J.I. Case Co.* (1989), 192 Ill. App. 3d 1081, 1085, 549 N.E.2d 877, 879.) We must therefore determine first whether Yale made a preliminary showing of good faith, as a matter of law, and if so, whether Pillsbury has overcome the presumption of validity of the agreement by clear and convincing evidence. *Banks v. R.D. Werner Co.* (1990), 201 Ill. App. 3d 762, 770, 559 N.E.2d 217, 222.

To aid us in this determination, we will review recent cases which have examined the good faith of settlements between third-party defendants/employers and plaintiffs/employees. In *Wilson v. The Hoffman Group, Inc.*, our supreme court addressed the issue of whether a settlement between a plaintiff/employee and a third-party defendant/employer was supported by consideration and therefore made in good faith. The court noted previous appellate court cases, *Dixon v. Northwestern Publishing Co.* (1988), 166 Ill. App. 3d 745, 520 N.E.2d 932, and *Ellis v. E.W. Bliss & Co.* (1988), 173 Ill. App. 3d 779, 527 N.E.2d 1022, which had reached this issue. In *Dixon* the plaintiff/employee brought suit under the Structural Work Act against the owner of the work site, who then filed a third-party complaint against plaintiff's employer for contract indemnity and contribution. Plaintiff had also filed an application seeking benefits pursuant to the Workers' Compensation Act against his employer. Plaintiff and his employer entered into a settlement agreement whereby the employer agreed to pay the

plaintiff $110,000 and to waive its workers' compensation lien to the extent of $70,000. The third-party plaintiff argued that the settlement lacked consideration and was not in good faith because the employer did not have a legal liability to compensate the plaintiff outside of the Workers' Compensation Act. The appellate court held, however, that because the employer was potentially liable in tort for purposes of the Contribution Act until he raised and proved an affirmative defense under the Workers' Compensation Act, sufficient consideration existed to support a settlement for purposes of the Contribution Act. The court also found that a settlement is not made in bad faith for purposes of the Contribution Act simply because its purpose is to eliminate third-party liability, noting:

> "The policy in Illinois is to encourage settlements. Engrafting a restriction on the right to settle directly with a plaintiff would restrict this policy, and this we decline to do." *Dixon*, 166 Ill. App. 3d at 752, 520 N.E.2d at 937.

In *Ellis v. E.W. Bliss & Co.*, plaintiff was injured operating a punch press at work and brought suit against the manufacturer of the press and her employer. The employer asserted the exclusive remedy of the Workers' Compensation Act and was dismissed from the suit. The manufacturer then filed a third-party complaint for contribution against the employer, whereupon the employer negotiated a settlement agreement with the plaintiff/employee. According to the settlement agreement, the employer was to pay $250,000 to plaintiff and waive its workers' compensation lien of $38,153.07. The agreement was submitted to the court for a "good faith" finding, and the manufacturer objected, arguing that there was no consideration for the agreement because plaintiff's action in tort against his employer had already been dismissed. The appellate court rejected this argument, finding that by settlement of the workers' compensation liability the employer was also extinguishing "potential liability" in the third-party action, rather than "potential liability" only in the action of plaintiff against the employer, and noting the discharge from contribution provided in section 2(d) of the Contribution Act. *Ellis*, 173 Ill. App. 3d at 782-83, 527 N.E.2d at 1024.

In the *Wilson* case, a worker injured in a roofing accident brought suit against the general contractor of the job, who then filed a third-party complaint for contribution against the plaintiff's employer. Plaintiff and his employer entered into a settlement agreement whereby the employer paid $24,000 in cash and agreed to waive its $149,737 statutory workers' compensation lien in exchange for a release from liability from plaintiff. The court agreed with the positions

articulated in the *Dixon* and *Ellis* cases that, because employers remain liable in tort to plaintiffs until they raise the defense of exclusive remedy under the Workers' Compensation Act and are potentially liable to third parties for contribution, a plaintiff's release of his employer constitutes consideration under the Contribution Act and its acceptance constitutes a valid settlement between the employer and employee. It specifically noted in connection therewith:

> "It would be incongruous for us to hold that while an employer is subject to liability in tort under the Contribution Act, it cannot avail itself of the Act's provisions to discharge that liability." (*Wilson*, 131 Ill. 2d at 318, 546 N.E.2d at 529.)

The supreme court rejected the argument of the plaintiff in *Wilson*, however, that the amount of the workers' compensation lien waiver should not be set off against any subsequent judgment obtained by plaintiff, along with the cash settlement under section 2(c) of the Contribution Act. The court noted that if the amount of the lien waiver is not set off from such recovery, the plaintiff would retain both compensation from the employer in the form of the workers' compensation benefits and identical damages from the general contractor who would then be required to pay more than its *pro rata* share of liability. The court held that the general contractor would be entitled to a setoff to the extent of the amount stated in the release. *Wilson*, 131 Ill. 2d at 324, 546 N.E.2d at 531.

Each of these cases involved situations in which the settlement between the employer and employee included a waiver of the workers' compensation lien. Two appellate court decisions subsequent to *Wilson*, however, have involved settlements which did not provide for a total waiver by the employer or insurance carrier of its workers' compensation lien. In *Cleveringa v. J.I. Case Co.* (1989), 192 Ill. App. 3d 1081, 549 N.E.2d 877, an injured worker brought a products liability action against the manufacturers of a boring machine and boring rods, seeking to recover for injuries sustained while the worker was using the boring machine in his employment. The manufacturer defendants then filed a third-party action against plaintiff's employer for contribution, and the employer's workers' compensation insurance carrier was allowed to intervene. Plaintiff settled with his employer by way of a structured settlement valued at $1.07 million and with the manufacturer of the boring rods for $30,000, releasing both from all further liability. At the time of settlement the insurance company had paid plaintiff approximately $275,000 in workers' compensation benefits and held a lien in that amount against any settlement or judgment obtained by plaintiff pursuant to section 5(b) of the Work-

ers' Compensation Act. The settlement agreement provided that the insurance company would waive enforcement of the lien against the parties to the agreement and funds received thereunder but would reserve its right to enforce the lien against funds received by plaintiff from settlement with or judgment against the manufacturer of the boring machine. The trial court found that the settlement agreement was in good faith and dismissed all pending claims except for plaintiff's action against the manufacturer of the boring machine. The appellate court noted that there was no allegation by the manufacturer of the boring machine that the agreement resulted from collusion, fraud, or tortious conduct. It rejected the arguments of the manufacturer that the settlement was in bad faith because it amounted to selective enforcement of the workers' compensation lien and that the language of the agreement referring to the workers' compensation lien should be read as a complete waiver of the lien such that the manufacturer should receive the benefit of a setoff in the amount of the lien. It found *Wilson* distinguishable on its facts because the insurance carrier waived enforcement of the lien only against the parties and funds contemplated by the agreement and not against funds received by plaintiff from the manufacturer. Thus, the court reasoned, there was no risk of double recovery by plaintiff or of the manufacturer being required to pay more than its *pro rata* share of the common liability. *Cleveringa*, 192 Ill. App. 3d at 1086-87, 549 N.E.2d at 880.

In *Banks v. R.D. Werner Co.* (1990), 201 Ill. App. 3d 762, 559 N.E.2d 217, plaintiff construction workers brought suit under the Structural Work Act against the general contractor of a work project and in strict tort liability against the manufacturer of a plywood plank, alleging that unreasonably dangerous defects in a scaffolding plank proximately caused the injuries plaintiffs suffered in a fall at the work site. Plaintiffs' employer, who was not then a party to the suit, filed a motion seeking approval of settlements with the plaintiffs/ employees and good-faith findings pursuant to the Contribution Act. The settlements provided that the employer and the second employee would pay the first employee $8,000 and that the employer and the first employee would pay the second employee $7,000. The employer sought a discharge from any further liability to the plaintiffs or any other tortfeasor pursuant to Illinois common law or statute, including the Contribution Act. The settlement was made contingent on a finding of good faith under the Contribution Act by the trial court. There was a $40,000 to $50,000 workers' compensation lien which had not been waived and which would be payable out of any subsequent recov-

ery by the plaintiff against the manufacturer, unless the insurance carrier agreed to waive it. The appellate court found that the parties to the settlement had made a preliminary showing of good faith because the plaintiffs had received a total of $15,000 which could be the only money the plaintiffs might receive other than the workers' compensation awards and in return the employer received a release from the plaintiffs for any potential tort liability to them. The court also rejected an argument that the agreement was not in good faith, as a matter of law, because the insurance carrier had so far not waived its lien, citing *Cleveringa* for the proposition that the failure of even an employer to waive a workers' compensation lien does not *ipso facto* render a settlement invalid as having been made in bad faith. While the court noted that evidence of consideration was stronger in cases in which employers or insurance carriers waived their lien, the test was not whether the evidence of consideration could have been stronger but whether it was strong enough. *Banks*, 201 Ill. App. 3d at 771, 559 N.E.2d at 222.

In the instant case, the September 12, 1989, settlement agreement provides in pertinent part:

"Respondent to pay and petitioner to receive $12,135.00 representing approximately 75% of the left leg (150 weeks) *in full, final and complete settlement of any and all claims petitioner now has or may have in the future as a result of an accident of 11/26/88 while in the employ of the respondent.* The disputes between the parties were as to the nature and extent of injury and responsibility for future medical treatment. The parties specifically agree that neither shall have the right to re-open the settlement agreement under Section 19H. In addition, the Parties herein agree that Petitioner shall be entitled to further medical care pursuant to Section 8(a), up to a total expenditure of $15,000.00. Petitioner herein further agrees to contact Respondent's insurer before undergoing any further medical care." (Emphasis added.)

A copy of the settlement agreement was attached to Yale's motion for settlement approval and "good faith" finding and was incorporated by reference thereto. The above italicized provision of the settlement agreement indicates, on its face, that there was consideration for the agreement and that the consideration was not illusory; plaintiff received $12,135 plus payment of future medical expenses, not to exceed $15,000 in total settlement of any and all present and future claims plaintiff may have against his employer as a result of this accident. Moreover, plaintiff's acceptance of the settlement agreement

amounts to an implied release and would be an affirmative defense to any action to impose additional liability upon Yale. (*Stacy v. Ametek, Inc.* (1990), 205 Ill. App. 3d 58, 61, 562 N.E.2d 1180, 1182.) In addition, because Yale was potentially subject to liability in tort by its employee until the defense was established and thus was also subject to liability as a joint tortfeasor under the Contribution Act, the settlement was supported by consideration. (*Wilson v. The Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 546 N.E.2d 524.) Finally, other language in the above section of the settlement agreement indicates that the nature and extent of plaintiff's injury and responsibility for future medical care were in dispute between the parties at the time of the settlement. While a disputed claim which is entirely without foundation cannot support a good-faith settlement, "where the claim is questionable, its compromise nevertheless will support a settlement agreement asserted in good faith." (*O'Connor v. Pinto Trucking Service, Inc.* (1986), 149 Ill. App. 3d 911, 917, 501 N.E.2d 263, 267.) Pillsbury does not argue that the disputed claim was without foundation between the parties to the settlement agreement.

■ We also note from our review of the settlement agreement that plaintiff's attorney was required to certify that he was knowledgeable of the terms of the Workers' Compensation Act and to recommend the settlement for approval by the Industrial Commission. The circuit court in its May 15, 1991, order noted that the motion for settlement approval and "good faith" finding referred to the workers' compensation settlement which was approved in a lump sum settlement order dated September 12, 1989, and specifically deferred to the findings of the Industrial Commission approving the plaintiff's and employer's lump sum settlement contract. We therefore find that Yale made a preliminary showing that a good-faith settlement had been made, shifting the burden to Pillsbury to establish that the agreement was not made in good faith.

Pillsbury contends in its brief to this court that Yale never established the exact amount paid under the Workers' Compensation Act. It notes that while the settlement agreement refers to the $12,135 lump sum settlement, Yale was also required to pay additional amounts for future medical treatment (up to $15,000), which plaintiff's counsel had estimated would bring the total amount paid in workers' compensation benefits to approximately $40,000, as was contended in the affidavit of Pillsbury's attorney attached to its objection to the motion for good-faith finding. We also note from our review of the settlement agreement that, as of the date of the settlement, plaintiff had already received workers' compensation benefits of $3,733.30

for temporary total disability (37 weeks at $100.90 per week), and that the employer had paid all medical bills. The total amount of the employer's lien could very well be, as Pillsbury's attorney stated in his affidavit, in the approximate amount of $40,000.

If the settlement agreement is approved and a good-faith finding is made, however, the amount of judgment setoff to which Pillsbury would be entitled would be much less than plaintiff actually received in total workers' compensation benefits, as long as Yale is allowed to retain its lien. Assuming that only the case against Pillsbury proceeds to trial, a jury's verdict against Pillsbury will render it liable for the whole extent of plaintiff's damages, subject only to setoff equal to the consideration plaintiff received in settlement from his employer and other settling defendants whose liability for contribution has been discharged under section 2(d) of the Contribution Act. If the lien is not waived in the approximate amount of $40,000, the amount of setoff from Pillsbury's liability to plaintiff would not include all of Yale's workers' compensation liability to plaintiff and Pillsbury would be required to indirectly reimburse Yale for payment of that liability out of any judgment rendered against it in this case. This is so because evidence of workers' compensation payments for plaintiff's disability and medical expenses would not be admissible into evidence by Pillsbury at trial. (See *Bryntesen v. Carroll Construction Co.* (1963), 27 Ill. 2d 566, 568, 190 N.E.2d 315, 317.) Moreover, because the obligatory benefits paid by an employer to an employee pursuant to workers' compensation derive from a source collateral to the alleged tort of third parties, they are, as such, not deducted or set off from a later judgment against the third-party tortfeasor. (*Stifle v. Marathon Petroleum Co.* (7th Cir. 1989), 876 F.2d 552, 560; accord *Wilson*, 131 Ill. 2d at 320, 546 N.E.2d at 530.) However, if the employer gives a lien waiver as part of a settlement with his employee, the value of an employer's workers' compensation lien which was given to the employee as part of the settlement will be set off against the employee's recovery from a third party. (*Wilson*, 131 Ill. 2d at 324, 546 N.E.2d at 531.) Under this analysis it can quite readily be seen that the settlement agreement in the instant case will require Pillsbury to pay more than its *pro rata* share and was thus not in good faith. We therefore disagree with Yale that the plaintiff's ultimate recovery remains constant whether or not the lien is waived. We also specifically disagree with Yale's characterization of the supreme court's holding in *Wilson* that even if the workers' compensation lien is not waived, the total amount of workers' compensation payments received by plaintiff is set off from the judgment. The court in *Wilson* distinguished between

collateral-source workers' compensation benefits which do not diminish plaintiff's recovery and the waiver of the employers' lien which is part of the consideration for the settlement. In the latter case the full value of the lien waiver will be set off from plaintiff's recovery pursuant to section 2(c) of the Contribution Act.

■ Neither does our review of the above-noted case law dealing with the good faith of settlements convince us that the trial court correctly found that the agreement was in good faith. The consideration for the employee's release of liability of the employer was quite readily seen in *Dixon, Ellis* and *Wilson*. In each case there was a cash payment and release of the employer's lien, which is of value to the plaintiff/employee because he or she will not be required to refund any part of a judgment proceeds or settlement monies received from other defendants. Moreover, while in *Cleveringa* and *Banks* the employer or insurance carrier did not agree to release their liens against nonsettling defendants as part of the settlement with the employee, it is evident that the employees were to receive cash in excess of the workers' compensation benefits already received, for which the employer or insurance company retained its lien. Thus, while, as the court noted in *Banks*, the test is not whether the evidence of consideration could have been stronger but whether it was strong enough, for there to be good faith for such employee and employer settlements there must be some *net* consideration extended by the employer to the employee.

In the instant case, *all* of the monies extended to the plaintiff/employee by Yale, whether the initial obligatory payments for disability and medical treatment or the lump sum settlement of future disability and up to $15,000 in future medical treatment, can be recovered by Yale by way of its retained lien. It is apparent then that Yale is being asked to pay nothing to its employee by way of this agreement and, accordingly, that Pillsbury is being asked to pay more than its *pro rata* share of liability to plaintiff. We do not believe that such scenario was contemplated by the Contribution Act. Our supreme court noted in *dicta* in *Doyle v. Rhodes* that in a situation in which the Contribution Act may impact upon an employer's right of recoupment under section 5(b) of the Workers' Compensation Act (Ill. Rev. Stat. 1989, ch. 48, par. 138.5(b)), some accommodation between the two statutes may be in order. (See *Doyle*, 101 Ill. 2d at 14-15, 461 N.E.2d at 389.) While the supreme court laid to rest in *Wilson* the issue of whether an employer could enter into a settlement with an employee of its workers' compensation liability and thereby discharge its contribution liability to third-party tortfeasors liable to such plaintiff/employee, we

believe a proper accommodation between the two statutes would require that in order for the settlement to be in good faith, the plaintiff/employee must receive some net consideration for the agreement. Accordingly, we find that Pillsbury established from all of the surrounding circumstances that the settlement agreement between Yale and plaintiff was not in good faith, and that the trial court improperly dismissed Pillsbury's third-party complaint for contribution against Yale because it abused its discretion in approving a good-faith finding under section 2(c) of the Contribution Act for such agreement. We therefore reverse the May 15, 1991, order of the circuit court of St. Clair County and remand the case for further proceedings.

Reversed and remanded.

HARRISON and H. LEWIS, JJ., concur.