JAMES M. ROMACK, Plaintiff-Appellee, v. R. GINGERICH COMPANY, Defendant-Appellant (Central Illinois Light Company *et al.*, Defendants-Appellees).

Third District   No. 3—99—0820

Opinion filed July 12, 2000.

Joseph J. Bembenek (argued), of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellant.

Christopher R. Doscotch and Jay H. Janssen (argued), both of Janssen Law Center, of Peoria, for appellee James M. Romack.

Robert S. White (argued), of Costigan & Wollrab, P.C., of Bloomington, for appellee Industrial Hygiene Services, Inc.

Karen L. Kendall, Mark D. Hansen, Craig L. Unrath, and Bradford B. Ingram, all of Heyl, Royster, Voelker & Allen, of Peoria, for appellee Central Illinois Light Company.

Jason D. Altman (argued), of Schwartz & Freeman, of Chicago, for appellee M&O Environmental Company.

JUSTICE BRESLIN delivered the opinion of the court:

Plaintiff James M. Romack filed suit against defendants R. Gingerich Co. (Gingerich), Central Illinois Light Company (CILCO), and Industrial Hygiene Services, Inc. (IHS), for injuries he sustained in a work-related accident. Defendants subsequently filed suit against each other for contribution and third-party actions against Romack's employer, M&O Environmental Company (M&O). A settlement agreement between Romack, CILCO, IHS and M&O was approved by the trial court and Gingerich appeals. For the following reasons, we affirm.

## FACTS

Romack, an employee of M&O, was engaged in the removal of large asbestos panels from the Wallace Street Station demolition project when he was injured. At the time, Romack was standing in a Dumpster, signaling a crane operator who was lowering the panels into the Dumpster. The Wallace Street Station is owned by CILCO and CILCO was allegedly overseeing the demolition project. Gingerich owned the crane that was being used and also provided the crane operator. IHS was a contractor for the work involved in the demolition.

Romack filed suit against CILCO, Gingerich, and IHS alleging a cause of action for negligence. Romack also filed a worker's compensation claim against M&O. Nearly two years later, Romack entered into a lump-sum settlement agreement on his worker's compensation claim. The agreement provided that M&O would pay Romack for past medical expenses plus the sum of $167,500 for wage differential settlement, vocational retraining and future medical expenses, for a total settlement of $294,000. This sum was paid by E.C. Fackler (Fackler), M&O's worker's compensation insurance carrier. In addition to the 25% statutorily mandated deduction for attorney fees (see 820 ILCS 305/

5(b) (West 1998)), M&O agreed as part of the settlement to waive 25% of its right to reimbursement. Thus, M&O retained 50% of its lien, totaling $147,385.67.

Just over two years after his worker's compensation claim was settled, Romack entered into a settlement agreement for his common law claims with CILCO and IHS, along with M&O as a third-party defendant. Under this settlement agreement, M&O, through its comprehensive general liability insurer (CGL), American International Group (AIG), was to pay Romack $83,333.33. CILCO agreed to pay Romack $50,000 and IHS agreed to pay Romack $66,667.67 for a total settlement of $200,000.

In addition, the agreement required Romack to pay M&O $63,333.33 as partial payment of the worker's compensation lien, leaving M&O with a lien remaining of $84,052.34. In consideration for this payment, M&O waived enforcement of the remaining lien against Romack, CILCO and IHS but expressly reserved its right to enforce it against any funds received by Romack from a judgment or settlement with Gingerich.

The parties to the settlement agreement filed a joint motion for good-faith settlement pursuant to section 2 of the Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/2 (West 1998)). Though Gingerich filed an objection, the trial court found that the settlements were made in good faith and the motion was granted. At a subsequent hearing it dismissed Romack's claims against IHS and CILCO, and also dismissed Gingerich's contribution actions against IHS, CILCO and M&O. Gingerich appealed.

## ANALYSIS

■ A trial court's finding that a settlement agreement was made in good faith is a matter within the court's discretion and a reviewing court will not reverse such a finding absent an abuse of discretion by the trial court. *In re Guardianship of Babb*, 162 Ill. 2d 153, 642 N.E.2d 1195 (1994). An abuse of discretion occurs when no reasonable person would agree with the position adopted by the trial court. *Schwartz v. Cortelloni*, 177 Ill. 2d 166, 685 N.E.2d 871 (1997).

The sole question presented for our review is whether the trial court abused its discretion when it determined that the settlement agreement between Romack, IHS, CILCO and M&O was made in good faith.

■ Section 2 of the Contribution Act provides that a tortfeasor to whom a release or covenant not to sue is given in good faith is discharged from all liability for any contribution to any other tortfeasor. 740 ILCS 100/2 (West 1998). Additionally, a settlement between

one tortfeasor and the plaintiff will result in an equal reduction or set-off in the amount of any judgment entered against a nonsettling tort-feasor. *Higginbottom v. Pillsbury Co.*, 232 Ill. App. 3d 240, 596 N.E.2d 843 (1992).

■ In determining whether the parties to a settlement agreement acted in good faith, courts must take into account all of the circumstances surrounding the settlement. *Cleveringa v. J.I. Case Co.*, 192 Ill. App. 3d 1081, 549 N.E.2d 877 (1989). Once there has been a preliminary showing of good faith, the burden shifts to the party challenging the settlement to establish that it was not made in good faith. *Banks v. R.D. Werner Co.*, 201 Ill. App. 3d 762, 559 N.E.2d 217 (1990).

■ Gingerich argues that the settlement agreement was not made in good faith because the amount of judgment setoff to which Gingerich would be entitled would be much less than Romack actually received in total worker's compensation benefits if M&O is allowed to retain the remaining portion of its lien. Gingerich relies heavily upon *Higginbottom* for this proposition.

In *Higginbottom*, the plaintiff filed suit against the defendant for the negligent construction of a guardhouse in which he was injured while working as a security guard. Plaintiff had settled a separate worker's compensation claim against his employer for $12,135 plus additional medical expenses arising in the future not to exceed $15,000. The employer retained its entire lien, estimated at $40,000. *Higginbottom*, 232 Ill. App. 3d at 253-54, 596 N.E.2d at 846.

The appellate court determined that the settlement agreement was not made in good faith because, if the plaintiff's employer was allowed to retain its lien, the defendant would be entitled to a judgment setoff in an amount much less than the plaintiff actually received in total worker's compensation benefits. If the case against the defendant were to proceed to trial, a jury verdict against the defendant would render it liable for the whole extent of the plaintiff's damages, subject only to a setoff equal to the consideration the plaintiff received in settlement from his employer and other settling defendants whose liability for contribution had been discharged under section 2(d) of the Contribution Act. *Higginbottom*, 232 Ill. App. 3d at 255, 596 N.E.2d at 853.

As noted by the court in *Solimini v. Thomas*, 293 Ill. App. 3d 430, 688 N.E.2d 356 (1997), the real problem in the *Higginbottom* case was that there existed no consideration for the settlement agreement. Rather, the employer's apparent detriment was illusory because it had not promised to pay anything in the settlement agreement that it could not recoup via its lien.

Such is not the case here. Romack received $167,500 from M&O's

worker's compensation insurance carrier. Romack received $200,000 from the remaining defendants, including $83,333.33 paid by M&O through its CGL insurance carrier, AIG. Though Romack agreed to reimburse M&O $63,333.33, that was for partial payment of the worker's compensation lien. M&O may never recoup the $83,333.33 paid to Romack pursuant to the settlement agreement at issue here. Additionally, M&O agreed to waive 25% of its lien, totaling $73,692, based on the worker's compensation award.

This case is factually analogous to the *Cleveringa* decision in which a similar settlement agreement was determined to have been made in good faith. *Cleveringa*, 192 Ill. App. 3d at 1085, 549 N.E.2d at 880. In *Cleveringa*, the plaintiff brought suit against two defendants, Case and McLaughlin, for injuries he sustained at work. The defendants then filed contribution claims against each other and brought third-party complaints against Telecom, the plaintiff's employer. Telecom paid $275,000 in worker's compensation benefits. Telecom and McLaughlin then entered into a settlement agreement with the plaintiff whereby the plaintiff was to receive $30,000 from McLaughlin and $1.07 million from his employer. *Cleveringa*, 192 Ill. App. 3d at 1084, 549 N.E.2d at 879.

As in the case before us, Telecom, through its worker's compensation insurer, waived enforcement of its worker's compensation lien against the parties to the settlement agreement but not against Case. The appellate court found the settlement agreement to be valid, noting that the agreement was not rendered unfair simply because Case may be subject to a judgment greater than that which it believed was appropriate. A party who refuses to settle a case on agreed terms always risks that he will be exposed to enhanced liability by that refusal. *Cleveringa*, 192 Ill. App. 3d at 1085, 549 N.E.2d at 880.

A settlement agreement will not be said to be lacking in good faith simply because an employer or insurance company does not agree to release its liens as part of the settlement agreement. See *Banks*, 201 Ill. App. 3d at 770, 559 N.E.2d at 222. Rather, adequate consideration for a settlement agreement exists when a plaintiff-employee is to receive cash from the defendants in excess of the worker's compensation benefits received for which the employer or insurance company retained its lien. See *Cleveringa*, 192 Ill. App. 3d at 1087, 549 N.E.2d at 880.

Here, Romack is to receive $200,000 in cash from all of the defendants except Gingerich. This amount exceeds his worker's compensation settlement of $167,500 for which M&O retained its lien. The settlement agreement is not rendered invalid simply because it effectively reduces the amount of setoff to which Gingerich is entitled.

As noted, M&O paid an additional $83,333.33 which it can never recoup via its lien for the worker's compensation settlement. M&O has sufficiently shown valid consideration exists for the settlement agreement and we will not find that agreement unfair simply because Gingerich may now be subject to a judgment greater than what it believes appropriate. Accordingly, we affirm the trial court's judgment finding the settlement agreement was made in good faith.

For the foregoing reasons, the judgment of the circuit court of Tazewell County is affirmed.

Affirmed.

SLATER, P.J., and HOMER, J., concur.