# Illinois Official Reports

## Appellate Court

---

### *Bayer v. Panduit Corp.*, 2015 IL App (1st) 132252

---

| | |
|---|---|
| Appellate Court Caption | RONALD BAYER, Plaintiff and Cross-Appellee, v. PANDUIT CORPORATION, Defendant and Third-Party Plaintiff-Appellant (Area Erectors, Inc., Defendant and Third-Party Defendant-Appellee and Cross-Appellant). |
| District & No. | First District, First Division<br>Docket No. 1-13-2252 |
| Filed | August 10, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-L-09877; the Hon. William J. Haddad, Judge, presiding. |
| Judgment | Affirmed in part; reversed in part. |
| Counsel on Appeal | Patton & Ryan, LLC (John W. Patton, Jr., and Michael G. Vranicar, of counsel), Hinshaw & Culbertson, LLP (David R. Creagh and David J. Richards, of counsel), and Clausen Miller, P.C. (Edward M. Kay and Paul V. Esposito, of counsel), all of Chicago, for appellant.<br><br>Querrey & Harrow, Ltd., of Chicago (Kevin J. Caplis, David M. Lewin, and Joshua T. Barney, of counsel), for appellee and cross-appellant.<br><br>Horwitz, Horwitz & Associates, Ltd., of Chicago (Clifford W. Horwitz, Thomas A. Kelliher, and Jay R. Luchsinger, of counsel), for cross-appellee. |

Panel            JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justices Connors and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1       This appeal arises from the October 5, 2012 order entered by the circuit court of Cook County, which granted a joint motion for a good-faith finding and approval of a settlement agreement between plaintiff Ronald Bayer (Bayer) and third-party defendant Area Erectors, Inc. (Area), in a negligence action, thereby dismissing with prejudice Area as a party in a contribution claim initiated by defendant and third-party plaintiff Panduit Corporation (Panduit). This appeal also arises from the circuit court's July 18, 2013 order granting Bayer's motion for attorney fees and costs against Area in a separate claim under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2012)). On appeal, Panduit appeals from the circuit court's October 5, 2012 ruling, and argues that the court erred in approving the settlement agreement between Bayer and Area and that Panduit's contribution claim against Area should not have been dismissed with prejudice. On appeal, Area appeals from the circuit court's July 18, 2013 order granting Bayer's motion for attorney fees and costs against Area in a separate workers' compensation claim. For the following reasons, we affirm in part and reverse in part the judgment of the circuit court of Cook County. We have jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994).

¶ 2                            BACKGROUND

¶ 3       Panduit is an electrical components manufacturer and owner of a warehouse facility located in De Kalb, Illinois. In June 2007, Panduit, acting as its own general contractor, entered into an agreement with Garbe Iron Works, Inc. (Garbe), for the expansion of the warehouse facility. In the agreement, Panduit agreed to pay almost $3 million for Garbe to fabricate and erect structural steel for the expansion project. The agreement specified that Garbe was responsible for "initiating, maintaining and supervising all safety precautions and programs, including all those required by law in connection with the performance of the [a]greement," and that Garbe was required to comply with all Occupational Safety & Health Administration (OSHA) standards. Pursuant to the agreement, Garbe was required to include Panduit as an additional insured on Garbe's commercial general liability insurance policy. The agreement allowed Garbe to hire subcontractors, who must also be subjected to the same insurance requirements as Garbe.

¶ 4       Pursuant to a "purchase order," Garbe subcontracted Area to "[f]urnish all labor and equipment (including supervision) to upload and erect" structural steel, in exchange for $520,485. The purchase order specified that Area would name Garbe and Panduit as additional insureds on a $2 million insurance policy.

¶ 5       On June 20, 2007, Bayer, an employee of Area, was working as an ironworker on the construction site when he allegedly fell and sustained injuries. As a result of those injuries,

Bayer became a quadriplegic. Thereafter, Bayer filed a workers' compensation claim against Area.

¶ 6    On September 19, 2007, Bayer filed a lawsuit against Panduit for negligence. On March 24, 2008, Bayer filed a first amended complaint to include Garbe as a defendant.[1]

¶ 7    On April 30, 2009, Panduit filed a third-party complaint for contribution against Area, alleging that Area was also negligent in failing to ensure the safety of its employees, including Bayer. The third-party complaint for contribution requested that, in the event Panduit is held liable to Bayer, Panduit be awarded judgment against Area "in an amount commensurate with the relative degree of fault attributable to Area" in causing Bayer's injuries. On May 15, 2009, Area filed an answer and affirmative defenses to Panduit's third-party complaint for contribution.

¶ 8    On October 1, 2012, Area and Bayer filed a joint motion for a good-faith finding and approval of a settlement agreement between Bayer and Area (motion for a good-faith finding). The motion for a good-faith finding alleged that Bayer had filed a workers' compensation claim against his employer, Area; that Area has honored Bayer's workers' compensation claim and Bayer had been paid and continued to be paid temporary total disability and medical expenses; that the amount of workers' compensation lien to date totaled $5,275,585.57; that Bayer and Area, through Area's insurer Arch Insurance Company, have entered into a settlement agreement through an arm's-length bargaining process; and that the settlement agreement was supported by consideration. A copy of the settlement agreement was attached to the motion for a good-faith finding.

¶ 9    On October 1, 2012 and October 4, 2012, a hearing on the motion for a good-faith finding was held. On October 5, 2012, the circuit court granted the motion for a good-faith finding, approved the settlement agreement between Area and Bayer as one made in "good faith," and dismissed Area with prejudice as a third-party defendant in Panduit's contribution claim.[2]

¶ 10    On October 18, 2012, Bayer settled his claim against Garbe in the negligence action. Thus, Panduit proceeded to trial as the sole remaining defendant.

¶ 11    On October 23, 2012, a jury trial commenced on Bayer's negligence action. At trial, Bayer presented evidence that the cost of his life care plan ranged from about $17 million to over $25 million. On November 14, 2012, the jury entered a verdict in favor of Bayer and against Panduit in the sum of $80 million in damages, which included compensation for pain and suffering, but reduced the $80 million in damages by 20% for Bayer's own contributory negligence, for a total of $64 million ($80 million - 20% = $64 million). On that same day, the circuit court entered a judgment against Panduit in the sum of $64 million plus costs.[3]

¶ 12    From December 12, 2012 to January 23, 2013, the circuit court entered several orders granting Panduit an extension of time to file a posttrial motion. On February 20, 2013, Panduit filed a posttrial motion, arguing, *inter alia*, that the circuit court erred in dismissing Panduit's

[1]Tylk Gustafson Reckers Wilson Andrews, LLC (Tylk), as structural engineer, was also named as a defendant. However, Tylk was subsequently dismissed as a defendant at the summary judgment stage of the case on June 16, 2010.

[2]Area was also dismissed with prejudice from a third-party contribution claim and a breach of contract claim filed by Garbe in January 2009.

[3]The record suggests that Panduit and Bayer later settled the lawsuit after the jury trial; hence, the jury's findings at trial are not issues before this court on appeal.

third-party contribution claim against Area upon its approval of the settlement agreement between Area and Bayer, where the settlement agreement was neither supported by good faith nor consideration.

¶ 13    On June 13, 2013, following a hearing on Panduit's posttrial motion, the circuit court denied the motion. In its ruling, the court incorporated by reference its prior findings at the October 2012 hearing on the motion for a good-faith finding. On June 13, 2013, the court entered an agreed order in which Bayer and Area, on behalf of its insurer Arch Insurance Company, agreed to extend workers' compensation benefits to Bayer until July 15, 2013.

¶ 14    Meanwhile, on March 5, 2013, while Panduit's posttrial motion was pending before the court, Bayer filed a motion for attorney fees and costs (motion for attorney fees) against his employer, Area, under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2012)). The motion for attorney fees, citing section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 2012)) and the holding in *Zuber v. Illinois Power Co.*, 135 Ill. 2d 407 (1990), requested the court to enter an order compelling Area to pay attorney fees in an amount representing 25% of future workers' compensation benefits for Bayer that had been suspended by statute as a result of the underlying settlements in the negligence action. On June 27, 2013, Area filed an amended response to Bayer's motion for attorney fees, requesting that the court deny Bayer's motion with respect to future medical or disability payments, or any future workers' compensation payments. On July 8, 2013, Bayer filed a reply in support of his motion for attorney fees.

¶ 15    On July 11, 2013, a hearing on Bayer's motion for attorney fees was held.

¶ 16    On July 12, 2013, Panduit filed a notice of appeal, appealing from the circuit court's October 5, 2012 order approving the settlement agreement between Bayer and Area, and dismissing with prejudice Panduit's third-party contribution claim against Area. Panduit also appeals from the circuit court's June 13, 2013 order denying its posttrial motion.

¶ 17    On July 18, 2013, the circuit court granted Bayer's motion as to attorney fees relating to future workers' compensation payments and denied the motion as to costs relating to future workers' compensation payments. In its ruling, the court required Area to pay 25% attorney fees to Bayer's counsel, the law firm of Horwitz, Horwitz & Associates, Ltd., "for future medical bills, lost wages, long term care, and any other compensation and benefit compensable under the Illinois Workers' Compensation Act incurred on or after July 16, 2013." The court also ordered that "medical bills and/or loss wage statements or any other claims of compensation are to be submitted to [Area's] insurance company, Arch Insurance Company, for reimbursement of twenty-five percent (25%) of attorney's fees on said medical bills, wage loss, long term care, and compensation and benefits by [Bayer] in a reasonably timely manner and paid in a reasonably timely manner by [Area's] insurance carrier, Arch Insurance [Company]." The order further stated that there "shall be no double recovery of attorney's fees. Recovery shall go to assist [Bayer] in the one-third (1/3) payment of attorney's fees being paid pursuant to the [c]ontractual [a]greement between [Bayer] and his attorneys, Horwitz, Horwitz & Associates, Ltd. pursuant to *In Re: Dierkes*, 191 Ill. 2d 326 (2000)." The July 18, 2013 order also stated that the court "finds no just reason to delay enforcement or appeal of this order."

¶ 18    On July 24, 2013, Panduit filed a supplemental notice of appeal to postdate the court's final order entered on July 18, 2013.

¶ 19    On July 31, 2013, Area filed a cross-notice of appeal, appealing from the court's July 18, 2013 ruling. On February 19, 2014, this court granted Area's motion to amend the cross-appeal

- 4 -

to label it as a "separate appeal," and granted Area leave to file an amended docketing statement.

¶ 20                                          ANALYSIS

¶ 21     We determine the following issues on appeal: (1) whether the circuit court erred in approving the settlement agreement between Bayer and Area and, in dismissing with prejudice, Panduit's third-party contribution claim against Area in the negligence action; and (2) whether the circuit court erred in granting Bayer's motion for attorney fees against his employer, Area, in the workers' compensation claim.

¶ 22     We first determine whether the circuit court erred in approving the settlement agreement between Bayer and Area and, in dismissing with prejudice, Panduit's third-party contribution claim against Area in the negligence action. We review the circuit court's decision under an abuse of discretion standard. *Johnson v. United Airlines*, 203 Ill. 2d 121, 135 (2003); *Dubina v. Mesirow Realty Development, Inc.*, 197 Ill. 2d 185, 192 (2001). "An abuse of discretion occurs when the ruling is arbitrary, fanciful, or unreasonable, or when no reasonable person would take the same view." *Favia v. Ford Motor Co.*, 381 Ill. App. 3d 809, 815 (2008).

¶ 23     Panduit argues that the circuit court erred in approving the settlement agreement between Bayer and Area and in dismissing with prejudice Panduit's third-party contribution claim against Area. Specifically, Panduit argues that the settlement agreement entered into by Bayer and Area was not made in good faith, where Area had paid nothing to Bayer as consideration for its release from the pending legal action. Panduit contends that consideration was lacking by pointing out that Area had a statutory lien under the Workers' Compensation Act representing the amount of past and future workers' compensation payments to Bayer; that Area did not waive its statutory lien on a portion of the proceeds that Bayer is to receive from Panduit; and that, as a result of the jury verdict against Panduit, Area's entire statutory lien remained available for recoupment. Panduit further argues that, by not waiving any portion of its lien, Area "has been wrongly allowed to shift its entire statutory liability" to Panduit and, thus, Area has not paid any "net" consideration to support a finding of good faith. Moreover, Panduit argues that Area's $2 million insurance policy, under which Panduit and Garbe were listed as insureds, did not constitute "consideration" for the settlement agreement because the policy limits were made available to satisfy Panduit's liability under the judgment, not Area's liability. Panduit further asserts that it was unfairly prejudiced by the dismissal of its contribution claim against Area, where Area specified the trip hazard in the construction plans, provided inadequate fall protection, and failed to supervise Bayer at the time of the accident.

¶ 24     Area counters that the settlement agreement was entered into in good faith, arguing that multiple considerations existed to support the agreement. Area argues that the settlement agreement stated that the $2 million from its primary insurance policy was Panduit and Garbe's money, however, Area "controlled that amount due to the fact that Area had a $500,000 deductible." Area argued that because it had "some control" over the $2 million, this supported the circuit court's finding, after hearing extensive arguments by the parties, that consideration existed. Area further argues that the lack of waiver of its workers' compensation lien did not constitute bad faith, and that Illinois courts have consistently rejected challenges to settlement agreements based on the argument that they shifted a disproportionate share of liability to a nonsettling tortfeasor, like Panduit, which received an unfavorable verdict at trial. Area further argues that, even without a lien waiver, Bayer received very tangible benefits

from the settlement–including the right to continue living in a house that had been outfitted to suit his physical needs, as agreed to in his workers' compensation case, as well as the continuation of workers' compensation benefits to Bayer until the negligence action was fully resolved despite Area's right under Illinois law to suspend workers' compensation payments to Bayer once he had received any amount of money paid by another party in the lawsuit. Area further contends that it had an excess insurance policy of $25 million that was issued by insurer, "Chartis/AIG Insurance," under which Panduit and Garbe were also named as additional insureds. Area notes that Chartis/AIG Insurance was the same insurer as Panduit's own insurer. Area claims that the entire $25 million had been triggered and exhausted to pay for Garbe's settlement as well as Panduit's posttrial settlement with Bayer which, consequently, left Area with no additional insurance coverage "to satisfy any contribution counterclaim or judgment."

¶ 25    The Joint Tortfeasor Contribution Act (Contribution Act) (740 ILCS 100/1 *et seq.* (West 2010)) "creates a statutory right of contribution in actions 'where 2 or more persons are subject to liability in tort arising out of the same injury to person or property, or the same wrongful death' (740 ILCS 100/1, 2(a) (West 1996)), to the extent that a tortfeasor pays more than his *pro rata* share of the common liability." *Johnson*, 203 Ill. 2d at 128. Section 2 of the Contribution Act states, in relevant parts, as follows:

> "(c) When a release or covenant not to sue or not to enforce judgment is given in *good faith* to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater.
>
> (d) The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor." (Emphasis added.) 740 ILCS 100/2(c), (d) (West 2010).

Although the term "good faith" is not defined by the Contribution Act, a settlement "will not be found to be in good faith if it is shown that the settling parties engaged in wrongful conduct, collusion, or fraud," or "if it conflicts with the terms of the [Contribution] Act or is inconsistent with the policies underlying the [Contribution] Act." *Johnson*, 203 Ill. 2d at 134. The two public policies underlying the Contribution Act include "the encouragement of settlements and the equitable apportionment of damages among tortfeasors." *Id.* at 133.

¶ 26    Here, Panduit does not argue on appeal that any wrongful conduct, collusion, or fraud occurred to undermine the circuit court's finding of good faith. Nor does it argue that the public policy of the Contribution Act which is to encourage settlement was violated. Rather, Panduit argues that the settlement agreement entered into between Bayer and Area was inconsistent with the second purpose of the Contribution Act, which is promoting the equitable apportionment of damages among tortfeasors. Panduit argues that Area's relative culpability was high and its settlement with Bayer shifted its entire liability to Panduit at trial. Thus, our relevant inquiry is whether the circuit court abused its discretion in finding good faith in approving the settlement agreement.

¶ 27    In order to prove whether a settlement was negotiated in good faith within the meaning of the Contribution Act, the settling parties carry the initial burden of making a preliminary

showing of good faith. *Id.* at 132. Once a preliminary showing of good faith is made by the settling parties, the burden of proof shifts to the nonsettling party, who challenges the good faith of the settlement. That party must prove "the absence of good faith by a preponderance of the evidence." *Id.* " 'Ultimately, however, whether a settlement satisfies the good faith requirement as contemplated by the [Contribution Act] is a matter left to the discretion of the trial court based upon the court's consideration of the totality of the circumstances.' " *Cellini v. Village of Gurnee*, 403 Ill. App. 3d 26, 37 (2010) (quoting *Johnson*, 203 Ill. 2d at 135).

¶ 28    In the instant case, a copy of the settlement agreement was attached to Area and Bayer's October 1, 2012 joint motion for a good-faith finding, which detailed the release terms to which Bayer and Area agreed. Thus, we find that Area sufficiently made a preliminary showing of good faith, and the burden of proof shifted to Panduit to show an absence of good faith by a preponderance of the evidence. See *Johnson*, 203 Ill. 2d at 132 (a settling party must show the existence of a legally valid settlement agreement); *Cellini*, 403 Ill. App. 3d at 37 (settling tortfeasor made a preliminary showing of good faith where it submitted to the circuit court a copy of the "full and final release and satisfaction agreement"); see generally *Snoddy v. Teepak, Inc.*, 198 Ill. App. 3d 966, 969 (1990) (a preliminary showing of good faith was evidenced by the settling parties' "release" and the circuit court properly presumed that the settlement was valid). However, we note that not all legally valid settlements satisfy the good-faith requirements of the Contribution Act. See *Johnson*, 203 Ill. 2d at 132; *Bowers v. Murphy & Miller, Inc.*, 272 Ill. App. 3d 606, 610 (1995).

¶ 29    The terms of the settlement agreement between Bayer and Area provided as follows:

"For the sole consideration of the payment to [Bayer] at this time of the sum of:

1. Arch/Area represents that the workers' compensation lien for medical and indemnity as of today's date is $5,275,985.57. If the civil case or any portion thereof settles before a verdict is rendered, Arch/Area *** agrees to waive its entire workers' compensation lien pursuant to [section] 5(b) of the Illinois Workers' Compensation [A]ct as it relates to said settlement. (For example, if [Bayer] settles with only one party before a verdict, then the lien is waived as to that settlement only, but the lien remains as to any verdict or recovery arising out of the verdict as stated below. Or, if [Bayer] settles with both Panduit and [Garbe] before a jury verdict, then the entire [section] 5(b) lien is waived.)

2. If any portion of the case is tried to verdict and recovery is made by reason of the verdict and an amount is paid that would satisfy the workers' compensation lien or any part of the *** lien, [Bayer] agrees to pay back the workers' compensation lien subject to section 5(b) of the [W]orkers' [C]ompensation [A]ct.

3. During the pendency of this matter and before the matter is resolved with all parties by either settlement or trial, Arch/Area *** agrees to continue to leave open all benefits under the Workers' Compensation Act as they are today.

4. If the case is settled with all parties prior to verdict then Arch/Area *** would stop workers' compensation payments once the settlement funds are received by [Bayer]. In addition, under said circumstance, [Bayer] and his attorneys would waive their statutory attorneys' fees in regards to future workers' compensation payments.

- 7 -

5. Arch to pay [$2 million] which it represents to be its policy limits on the primary commercial liability policy issued to [Area] as the named insured wherein [Panduit] and [Garbe] are additional insureds under said policy.

This [$2 million] is to be credited towards any settlement or verdict, until it is exhausted, against [Panduit] and [Garbe].

Subject to provision 6, this [$2 million] payment is not intended as and will not act as an advance on [w]orkers' [c]ompensation benefits, is not being paid pursuant to the Workers' Compensation Act, will not be utilized as to setoff for any future payments under the Workers' Compensation Act and Area/Arch waives its [section] 5(b) lien. This settlement represents a good faith settlement between [Bayer] and Arch/Area in the civil action, and is not a settlement of the [w]orkers' [c]ompensation action with Area. This is not a settlement with [Garbe] and [Panduit].

6. If [Bayer] recovers [$4 million] (or less) as a result of the verdict in the civil action then Arch/Area *** will waive its Section 5(b) lien as it relates to said [$2 million] referenced in paragraph 5 and waives any right to take said [$2 million] referenced in paragraph 5 as a set-off as to future workers' compensation payments.

However, if [Bayer] recovers more than [$4 million] as a result of the verdict in the civil action then Arch does not waive any [section] 5(b) lien (including any rights to set-off under the [W]orkers' [C]ompensation [A]ct) with regard to said [$2 million] referenced in paragraph 5.

7. The 'occupancy agreement' between [Bayer] and Arch Insurance, as agreed to in the workers' compensation case, shall not be interfered with by any settlement or jury verdict in the civil case. The rights as contained in that agreement survive the third party case and [Bayer] shall maintain the right to live in the premises as delineated in the 'occupancy agreement.'

8. The above stated offer of compromise and settlement is strictly contingent on the dismissal of [Area] as a party to this litigation. A joint motion on behalf of [Bayer] and [Area] for a good faith finding pursuant to the Illinois Contribution Act will be made. The settlement is contingent upon the granting of that motion and the dismissal of [Area] as a party defendant in [the civil case]."

¶ 30    As noted, on October 1, 2012 and October 4, 2012, a hearing on the motion for a good-faith finding was held. During the hearing, counsel for Area presented the terms of the settlement agreement and the circuit court heard arguments from the parties. In finding good faith, the circuit court posed questions to the parties regarding the settlement terms, posed different hypothetical scenarios to the parties in examining the effects of various contingencies listed in the settlement agreement, and heard the parties' arguments about whether valid consideration supported the settlement agreement.

¶ 31    Under the facts and the record before us, we find that Panduit failed to demonstrate, by a preponderance of the evidence, any showing of bad faith by the settling parties. The bulk of Panduit's argument before the circuit court centered around the perceived unfairness Panduit would face if the settlement agreement were approved, noting that a disproportionate amount of liability would be shifted to Panduit at trial and that the settlement agreement was supported by "illusory" consideration that did not satisfy the good-faith requirements of the Contribution Act. However, the record supports the circuit court's finding that the settlement agreement was

supported by valid consideration. Section 5(b) of the Workers' Compensation Act gives an employer the right to recover the amount of past or future compensation payments from any money judgment or settlement received by the injured employee in an action brought by the injured employee against another party who is legally liable for the injury. See 820 ILCS 305/5(b) (West 2010). Under the settlement agreement, Bayer and Area agreed to multiple contingency lien waivers by Area which could be triggered under different scenarios. Area and its insurer, Arch Insurance Company, agreed to waive the entirety of its workers' compensation lien against Bayer as to any portion of the negligence action that was settled before a verdict was rendered. Area further agreed that if Bayer recovered $4 million or less as a result of the trial verdict, then the workers' compensation lien would be waived as to the $2 million primary insurance proceeds that would be paid toward Panduit's and Garbe's liability in the negligence action. However, Bayer agreed that if he recovered more than $4 million as a result of the trial verdict, Area's workers' compensation lien would not be waived as to the $2 million primary insurance proceeds that would be paid toward Panduit's and Garbe's liability in the action. At the hearing on the motion for a good-faith finding, counsel for Area clarified that Area had also paid a $500,000 deductible on the policy in order to ensure that the $2 million policy proceeds would be triggered and paid toward Panduit's and Garbe's liability as the policy insureds. Although it is now known to us that Panduit eventually proceeded to trial as the sole defendant and that on November 14, 2012, the jury rendered a verdict of $64 million against Panduit–which consequently triggered the provision in the settlement agreement allowing Area to recoup the entirety of its workers' compensation lien against the verdict amount–hindsight is not the appropriate criteria for determining what was valid consideration *at the time* the circuit court made its finding of good-faith and approved the settlement agreement on October 5, 2012. Indeed, at the June 13, 2013 hearing on Panduit's posttrial motion, the circuit court denied the motion by correctly noting that "[t]he question of consideration is one that has been discussed in many contexts, and in this case, the issue of public policy and the need looking *at the time* that this agreement was made there was consideration that would support what occurred." We further found that, aside from Area's contingency lien waivers, paragraph 3 of the settlement agreement alone was sufficient as valid consideration between Bayer and Area. Under Illinois law, an employer has a right to suspend workers' compensation payments to an injured employee once any amount of money is received by the injured employee from a third-party tortfeasor for the same injury. See *Freer v. Hysan Corp.*, 108 Ill. 2d 421, 426-27 (1985); 820 ILCS 305/5(b) (West 2010). Under paragraph 3, Area agreed not to suspend workers' compensation payments to Bayer at any time prior to the final resolution of the litigation against all parties. The effect of this specific provision allowed Bayer to continue receiving workers' compensation payments, even though Bayer had settled the lawsuit with Garbe for a specified sum only 14 days after the hearing on the motion for a good-faith finding. Had the trial issues not been fully resolved by Panduit's posttrial settlement with Bayer, pursuant to paragraph 3 of the settlement agreement, Bayer would have continued to receive workers' compensation payments during the appeals process–payments which would have been crucial to Bayer as a quadriplegic needing around the clock nursing care.

¶ 32    In *Cleveringa v. J.I. Case Co.*, a reviewing court upheld the circuit court's finding that a settlement agreement between an injured worker, his employer, and a manufacturer was entered into in good faith, and upheld the court's dismissal of all pending claims, including the

contribution claims, against these settling parties. *Cleveringa v. J.J. Case Co.*, 192 Ill. App. 3d 1081, 1083-84, 1087 (1989). Pursuant to the settlement agreement, the injured worker agreed to release both a manufacturer and his employer from all further liability, in exchange for a total of $1.1 million. *Id.* at 1084. At the time of the settlement, the employer's workers' compensation insurance carrier, Home Insurance Company (Home), had paid the injured worker approximately $275,000 in compensation benefits and held a lien in that amount against any settlement or judgment obtained by the injured worker. *Id.* The settlement agreement included a term which provided that Home agreed to waive enforcement of its workers' compensation lien against the settling parties, but expressly reserved the right to enforce its lien against funds received by the injured worker against a nonsettling party, J.I. Case Company (Case). *Id.* Case argued that the settlement was not in good faith and should be set aside because Case may be subject to a judgment which was greater than that which Case believed was appropriate for settlement. *Id.* at 1085. In rejecting this argument, the *Cleveringa* court stated that "[s]uch a possibility always exists when parties to litigation contemplate settlement. A party who refuses to settle a case on agreed terms always risks that he will be exposed to enhanced liability by that refusal. This is the essence of settlement negotiations. A party either compromises in return for the certainty of a fixed result, or gambles that he will obtain a more favorable result by submitting the case to a jury." *Id.* at 1085-86. The *Cleveringa* court further noted that accepting Case's argument would in effect "defeat the public policy favoring settlements and would allow one party to veto any settlement unless all parties had agreed on their respective liabilities." *Id.* at 1086. In upholding the circuit court's finding of good faith, the *Cleveringa* court found that the record contained no evidence of collusion, fraud, or tortious conduct; that the trial court was aware of and considered all of the circumstances surrounding the settlement agreement; that the trial court conducted a full hearing at which each party was represented by counsel and the court determined that the parties to the agreement acted in good faith; and that "the good faith of a settlement is not judged by the obstacles it creates for the nonsettling tortfeasor." *Id.*

¶ 33    In the instant case, the facts presented before us are remarkably similar to those in *Cleveringa*. Here, Bayer and Area entered into a settlement agreement by which Bayer agreed to release Area from further liability and Area would be dismissed as a third-party to the litigation, in exchange for various contingency lien waivers that benefitted Bayer. At the time of the settlement, Arch Insurance Company, on behalf of Area as the employer, had paid over $5 million in workers' compensation and held a statutory lien in that amount against any settlement or judgment obtained by Bayer. However, as part of consideration, like *Cleveringa*, the settlement agreement included provisions stating that "Arch/Area" agreed to waive enforcement of its workers' compensation lien against any settling parties, but expressly reserved the right to enforce its lien against funds received by Bayer against any nonsettling parties. In addition, "Arch/Area" agreed not to exercise its lawful right to suspend workers' compensation payments to Bayer at any time prior to the final resolution of the litigation against all parties, even if, in the interim, Bayer receives money of any kind from a third-party tortfeasor for the same injury. See generally *Ross v. May Co.*, 377 Ill. App. 3d 387, 391 (2007) ("the essential element of consideration is a bargained-for exchange of promises or performances that may consist of a promise, an act, a *forbearance*, or the creation, modification, or destruction of a legal relation" (emphasis added)). Like *Cleveringa*, there was no evidence of collusion, fraud, or tortious conduct by the parties in reaching settlement. Like

- 10 -

Case, as the nonsettling party in *Cleveringa*, Panduit, as the nonsettling party in the case at bar, argues that the settlement was not entered into in good faith because Area had retained the right to enforce its entire workers' compensation lien against Panduit's judgment amount, and thus, Area "has been wrongly allowed to shift its entire statutory liability" to Panduit and has not paid any "net" consideration to support a finding of good faith. However, applying the principles in *Cleveringa*, we reject this contention. First, as discussed, paragraph 3 of the settlement agreement by which Area agreed to forbear its right to suspend workers' compensation payments to Bayer at any time prior to the final resolution of the litigation against all parties, was alone sufficient and valid consideration. The settlement agreement also set forth provisions which waived the entirety of Area's workers' compensation lien as to any funds received by Bayer as settlement with other parties in the negligence action. Second, the record shows that the circuit court was aware of and considered all of the circumstances surrounding the settlement agreement, conducted a full hearing at which each party was represented by counsel, and the court was well informed when it determined that the parties to the agreement acted in good faith. As the *Cleveringa* court noted, "the good faith of a settlement is not judged by the obstacles it creates for the nonsettling tortfeasor." *Cleveringa*, 192 Ill. App. 3d at 1086. Thus, we reject Panduit's argument that the settlement was not made in good faith. See also *Banks v. R.D. Werner Co.*, 201 Ill. App. 3d 762, 771 (1990) (failure of an employer to waive a workers' compensation lien does not *ipso facto* render a settlement invalid as having been made in bad faith); *Romack v. R. Gingerich Co.*, 314 Ill. App. 3d 1065, 1069 (2000) (settlement agreement entered into in good faith where employer only partially waived workers' compensation lien against injured employee and expressly reserved its right to enforce the lien against any funds received from the nonsettling party). Accordingly, we hold that, under the totality of the circumstances, the circuit court did not abuse its discretion in finding good faith and in approving the settlement agreement.

¶ 34     Panduit cites cases in support of its argument that Bayer and Area's settlement was not entered into in good faith. However, we find these cases to be factually distinguishable from the facts of the case at bar. Further, none of those cases nullify the analysis which we have explained above. See also *Higginbottom v. Pillsbury Co.*, 232 Ill. App. 3d 240 (1992) (no finding of good faith where employer retained its entire workers' compensation lien but offered no other consideration to injured worker), *abrogated on other grounds*, *Johnson*, 203 Ill. 2d 121.

¶ 35     Moreover, we reject Panduit's argument of bad faith premised upon the extent of the amount of damages awarded by the jury when measured against what it claims is Area's high relative culpability compared to Panduit's low relative fault. Courts have consistently rejected challenges to settlements brought on this basis. See *Johnson*, 203 Ill. 2d at 136-37 ("the disparity between the settlement amount and the *ad damnum* in the complaint is not an accurate measure of the good faith of a settlement"); *Palacios v. Mlot*, 2013 IL App (1st) 121416, ¶ 31 ("the fact that the settlement agreement would be 'advantageous to a party is not necessarily an indication of bad faith' " (quoting *Johnson*, 203 Ill. 2d at 138-39)); *Smith v. Texaco, Inc.*, 232 Ill. App. 3d 463, 469 (1992) ("[i]t has been recognized that settlements may be substantially different from the results of litigation because damages are often speculative and the probability of liability uncertain"); *Cleveringa*, 192 Ill. App. 3d at 1085-86 (allowing a settlement agreement to be set aside on the basis that a nonsettling party would be subject to a judgment greater than that which he believed was appropriate would in effect "defeat the

public policy favoring settlements and would allow one party to veto any settlement unless all parties had agreed on their respective liabilities"). Panduit's dissatisfaction with the settlement agreement between Bayer and Area is simply insufficient to establish bad faith. Accordingly, the circuit court did not err in dismissing with prejudice, pursuant to section 2(d) of the Contribution Act, Panduit's third-party contribution claim against Area in the negligence action. See 740 ILCS 100/2(d) (West 2010) ("[t]he tortfeasor who settles with a claimant *** is discharged from all liability for any contribution to any other tortfeasor").

¶ 36    We next determine whether the circuit court erred in granting Bayer's motion for attorney fees in his workers' compensation claim against his employer, Area.

¶ 37    On March 5, 2013, Bayer filed a motion for attorney fees in his workers' compensation claim against his employer, Area. The motion for attorney fees, citing section 5(b) of the Workers' Compensation Act (820 ILCS 305/5(b) (West 2012)) and the holding in *Zuber*, 135 Ill. 2d 407, requested the circuit court to enter an order compelling Area to pay attorney fees in an amount representing 25% of future workers' compensation benefits for Bayer that had been suspended by statute as a result of the underlying settlements[4] in the negligence action. On June 13, 2013, the court entered an agreed order in which Bayer and Area, on behalf of its insurer Arch Insurance Company, agreed to extend workers' compensation benefits to Bayer until July 15, 2013.[5] On June 27, 2013, Area filed an amended response to Bayer's motion for attorney fees. On July 8, 2013, Bayer filed a reply in support of his motion for attorney fees. On July 11, 2013, a hearing on Bayer's motion for attorney fees was held. On July 18, 2013, the circuit court granted Bayer's motion as to attorney fees relating to future workers' compensation payments and denied the motion as to costs relating to future workers' compensation payments. In its ruling, the court required Area to pay 25% attorney fees to Bayer's counsel, the law firm of Horwitz, Horwitz & Associates, Ltd., "for future medical bills, lost wages, long term care, and any other compensation and benefit compensable under the Illinois Workers' Compensation Act incurred on or after July 16, 2013." The court also ordered that "medical bills and/or loss wage statements or any other claims of compensation are to be submitted to [Area's] insurance company, Arch Insurance Company, for reimbursement of twenty-five percent (25%) of attorney's fees on said medical bills, wage loss, long term care, and compensation and benefits by [Bayer] in a reasonably timely manner and paid in a reasonably timely manner by [Area's] insurance carrier, Arch Insurance [Company]." The order further stated that there "shall be no double recovery of attorney's fees. Recovery shall go to assist [Bayer] in the one-third (1/3) payment of attorney's fees being paid pursuant to the [c]ontractual [a]greement between [Bayer] and his attorneys, Horwitz, Horwitz & Associates, Ltd. pursuant to *In Re: Dierkes*, 191 Ill. 2d 326 (2000)."

¶ 38    On appeal, Area does not dispute the payment of attorney fees for Bayer's permanent total disability benefits, but does dispute the payment of attorney fees "for suspended medical bills, long-term care, or other compensable benefits." Area contends that neither the Workers'

---

[4]As discussed, Garbe settled with Bayer prior to trial, and Panduit settled with Bayer at some point after the jury trial.

[5]As a result, workers' compensation benefits were officially suspended as of July 16, 2013. See *Freer*, 108 Ill. 2d at 426-27 (an employer has a right to suspend workers' compensation payments to an injured employee once any amount of money is received by the injured employee from a third-party tortfeasor for the same injury).

Compensation Act nor *Zuber* supports the notion that an injured employee is entitled to recovery of attorney fees for suspended future medical payments. Area further argues that because the $64 million jury verdict was partly comprised of an amount ($25 million - 20% contributory negligence = $20 million) for future medical expenses, of which Bayer's counsel was entitled to one-third in fees pursuant to his attorney-client contract with Bayer, allowing Bayer's counsel to now receive a fee on suspended future medical payments would amount to a double recovery of attorney fees. Area argues that Illinois court have not directly addressed this issue and urges this court to turn to Indiana courts for guidance, which have rejected the same exact argument for the recovery of attorney fees for suspended future medical payments.

¶ 39    Bayer argues that, under the Workers' Compensation Act and the holding in *Zuber*, he is entitled to a recovery of attorney fees for suspended future medical expenses. Bayer argues that Area's references to section 16(a) of the Workers' Compensation Act, which deals only with attorney fees sought by the workers' compensation attorneys against their own clients in pursuing the initial or original workers' compensation claim, did not apply to the situation at hand. Rather, Bayer contends that an employer's obligation to pay attorney fees and costs out of the reimbursements recovered from third-party actions are specifically provided for in section 5(b) of the Workers' Compensation Act. Bayer further argues that Area is liable to pay attorney fees for suspended future medical expenses regardless of whether the Industrial Commission enters a final order requiring the payment of such attorney fees. Bayer argues that, pursuant to *In re Estate of Dierkes*, 191 Ill. 2d 326 (2000), the statutory 25% attorney fees required of Area is a contribution toward Bayer's attorney fees that is owed to his legal counsel; that there is no risk of "double recovery" by Bayer's counsel because it merely reduces the total amount of fees that Bayer owes his own attorney; and that such contribution is necessary because Area directly benefitted from the work performed by Bayer's counsel in securing settlement funds in the negligence action. Bayer further argues that Indiana court decisions do not assist this court in resolving this issue.

¶ 40    This issue before us requires the interpretation of provisions under the Workers' Compensation Act, which is a question of law requiring *de novo* review. See *Taylor v. Pekin Insurance Co.*, 231 Ill. 2d 390, 395 (2008). The primary objective in interpreting a statute is to give effect to the intent of the legislature. *Id.* The most reliable indicator of the legislature's intent is the language of the statute, which must be given its plain and ordinary meaning. *Id.* Statutory language that is unambiguous must be applied as written, without resorting to other aids of construction. *Id.* We may not depart from the plain language of an unambiguous statute by reading into it exceptions, limitations, or conditions not expressed by the legislature. *Id.*

¶ 41    Section 5(b) of the Workers' Compensation Act provides in pertinent part as follows:

"(b) Where the injury *** for which compensation is payable under this Act was caused under circumstances creating a legal liability for damages on the part of some person other than his employer to pay damages, then legal proceedings may be taken against such other person to recover damages notwithstanding such employer's payment of or liability to pay compensation under this Act. In such case, however, if the action against such other person is brought by the injured employee *** and judgment is obtained and paid, or settlement is made with such other person, either with or without suit, *then from the amount received by such employee *** there shall be paid to the employer the amount of compensation paid or to be paid by him to such*

- 13 -

*employee \*\*\* including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.*" (Emphasis added.) 820 ILCS 305/5(b) (West 2010).

The above italicized portion of the Workers' Compensation Act concerns the employer's right of reimbursement under the Workers' Compensation Act, thus allowing the enforcement of the workers' compensation lien by the employer against funds recovered by an injured worker in any third-party negligence action for the same injury. Section 5(b) then continues to include the following:

"*Out of any reimbursement received by the employer* pursuant to this Section *the employer shall pay his pro rata share of all costs and reasonably necessary expenses in connection with such third-party claim, action or suit* and where the services of an attorney at law of the employee \*\*\* have resulted in or substantially contributed to the procurement by suit, settlement or otherwise of the *proceeds out of which the employer is reimbursed*, then, in the absence of other agreement, *the employer shall pay such attorney 25% of the gross amount of such reimbursement*." (Emphases added.) *Id.*

¶ 42        Area does not dispute that it owed Bayer 25% attorney fees for the suspended permanent total disability benefits to which Area had a right of reimbursement under the Workers' Compensation Act. Rather, Area argues only that it is not required under section 5(b) to pay 25% attorney fees on suspended future "medical bills, long-term care, or other compensable benefits."

¶ 43        Based on the plain language of section 5(b), we find that the Workers' Compensation Act does not require an employer to pay attorney fees for suspended future medical payments. Under section 5(b), the pool of money from which an employer has a right to reimbursement is "*the amount of compensation paid or to be paid by him to such employee \*\*\* including amounts paid or to be paid pursuant to paragraph (a) of Section 8 of this Act.*" (Emphasis added.) *Id.* In support of his argument that Area was required to pay attorney fees on the suspended future medical expenses, Bayer directs this court's attention to the term "compensation" as detailed in section 8 of the Workers' Compensation Act, and argues that "compensation" includes both wages and medical expenses. However, section 8(a) requires the payment of medical services to be made "*to the provider on behalf of the employee*," rather than directly to the employee. (Emphasis added.) 820 ILCS 305/8(a) (West 2010). Thus, because section 5(b) provides that an employer shall pay 25% attorney fees to the employee's attorney "[o]ut of any reimbursement received by the employer pursuant to this Section" and "the proceeds out of which the employer is reimbursed" (820 ILCS 305/5(b) (West 2010)) we find that, construing both sections 5(b) and 8(a) together, the plain language of the Workers' Compensation Act does not require the employer to pay attorney fees on suspended future medical expenses. Had the legislature intended for fees under section 5(b) to include future medical expenses, the legislature could easily have drafted section 5(b) to say that the employer's right to reimbursement included the amount of compensation paid or to be paid by the employer *to or on behalf of the employee*, which would have encompassed the medical expenses paid "to the provider on behalf of the employee" under section 8(a) of the Workers' Compensation Act. 820 ILCS 305/8(a) (West 2010). We cannot depart from the plain language of the statute by reading into it exceptions, limitations, or conditions not expressed by the legislature. See *Taylor*, 231 Ill. 2d at 395.

¶ 44        As additional support for its argument that the statutory 25% attorney fees do not apply to suspended future medical expenses, Area points to section 16a(D) of the Workers'

Compensation Act, which states that "[n]o attorney fees shall be charged with respect to compensation for undisputed medical expenses." 820 ILCS 305/16a(D) (West 2010). However, we find section 16a to be inapposite to the case at bar, where the section pertains to attorney fees sought by an attorney from his own client in pursuing any "initial or original claim" under the Workers' Compensation Act. As the circuit court correctly found in the July 11, 2013 hearing on Bayer's motion for attorney fees, citation to section 16a as authority was not proper because it "deals with the establishment or approval of attorney fees in relation to claims brought strictly under the [Workers' Compensation Act]." Thus, we find Area's references to section 16a, as well as case law relating to section 16a, to be irrelevant to the facts in the case at bar. See *Augustine v. Industrial Comm'n*, 239 Ill. App. 3d 561 (1992) (appealing from judgment pertaining to an award of attorney fees to the claimant's counsel in workers' compensation claim); *Spinak, Levinson & Associates v. Industrial Comm'n*, 209 Ill. App. 3d 120 (1990) (appealing from Industrial Commission's award of $100 nominal attorney fees to law firm for its representation of claimant in underlying workers' compensation proceeding).

¶ 45     On the other hand, in support of his argument that Area was required to pay attorney fees for suspended future medical expenses pursuant to section 5(b), Bayer relies primarily on the holding in *Zuber*, 135 Ill. 2d 407. However, we do not find *Zuber* to be helpful in advancing Bayer's position. In *Zuber,* the Industrial Commission awarded a widow workers' compensation benefits in the amount of $224.41 per week for a period 20 years for the decedent's death in the course of employment. *Id.* at 409. The widow filed a wrongful death action against a third-party tortfeasor, which resulted in a settlement providing her with a lump sum payment of $302,466.54 and an annuity in the amount of $900 per month for life (the cost of the annuity was $86,529). *Id.* at 410. Following settlement of the wrongful death action, the widow and the employer were unable to agree on the amount of attorney fees and costs owed by the employer pursuant to section 5(b) of the Workers' Compensation Act. *Id.* at 411. The circuit court interpreted section 5(b) of the Workers Compensation Act as allowing an assessment of fees and costs only on an employer's *past* payments of workers' compensation benefits and, thus, the court did not assess fees and costs on the amount of *future* compensation payments that the employer was relieved from making by virtue of the widow's recovery in the wrongful death action. *Id.* at 409, 411. The appellate court held that the employer owed fees and costs on both past and future compensation benefits, and ordered payment of the attorney fees to be made directly to the widow rather than her attorney. *Id.* at 412. On appeal, our supreme court affirmed the appellate court's ruling, finding that section 5(b) allows for the assessment of fees and costs for both *past* and *future* compensation payments. *Id.* at 415-16. The *Zuber* court specifically noted that because the source of funds from which an employer has a right to reimbursement under section 5(b) is "the amount of compensation paid or to be paid" by the employer to the beneficiary who succeeds in the third-party action, and that the employer benefits from the third-party action recovery both when it is repaid and when it is relieved of its obligation to make future compensation payments, it was appropriate to impose fees and costs in relation to both benefits. *Id.* The *Zuber* court, however, ordered that the attorney fees be paid directly to the widow's counsel, rather than to the widow herself, noting that there was no risk of "double recovery" where the widow had not fully compensated her attorneys under their attorney-client fee agreement. *Id.* at 421.

¶ 46     We find nothing in *Zuber* to help resolve the narrow issue before us–that is, whether the statutory 25% attorney fees imposed under section 5(b) of the Workers' Compensation Act

applies to suspended future medical expenses. *Zuber* concerned a wrongful death action and the Industrial Commission's award of $224.41 per week in workers' compensation benefits for a period of 20 years, which did not include medical payments (because the injured employee had died). The *Zuber* court merely expressed the holding that section 5(b) allows for the assessment of fees and costs for both *past* and *future* compensation payments, but makes no mention of whether those "future compensation payments" included suspended future medical expenses. As discussed, in this case Area does *not* dispute that it was required to pay 25% attorney fees on suspended *future* permanent total disability benefits pursuant to *Zuber*, but only disputes that it was also required to pay suspended future medical expenses.

¶ 47    We do not find Bayer's other cases, most of which were relied upon by *Zuber*, to be helpful as they do not directly address the issue before us. See *Lewis v. Riverside Hospital*, 116 Ill. App. 3d 845 (1983) (where a credit to the employer was ordered against an employee's third-party recovery, the appeal raised only a question as to the amount of the credit); *Denius v. Robertson*, 98 Ill. App. 3d 83 (1981) (issue on appeal concerned only the amount of credit to the employer against a recovery by an employee from a third party); *Vandygriff v. Commonwealth Edison Co.*, 68 Ill. App. 3d 396 (1979) (relevant issue on appeal concerned only the amount of recovery subject to a credit to an employer for future compensation payments against the amount of a third-party recovery); *Sands v. J.I. Case Co.*, 239 Ill. App. 3d 19 (1992) (holding that employer is subject to contribution under the Contribution Act to the extent of its reasonably projected liability for future workers' compensation medical benefits, but makes no mention of whether employer owes statutory legal fees on suspended future medical expenses).

¶ 48    Bayer further cites *In re Estate of Dierkes*, 191 Ill. 2d 326, in arguing that the 25% statutory attorney fees required of Area on the suspended future medical expenses would not be duplicative of the legal fees which Bayer's counsel was entitled to receive from Bayer pursuant to their attorney-client fee agreement. Bayer argues that the statutory attorney fees imposed upon Area merely reduces the total amount of fees that Bayer owes his own attorney, and that such contribution by Area is necessary because Area directly benefitted from the work performed by Bayer's counsel in securing settlement funds in the negligence action. However, we find nothing in *In re Estate of Dierkes* to suggest that an employer is required under section 5(b) of the Workers' Compensation Act to pay attorney fees for any suspended future medical expenses. *In re Estate of Dierkes* involved a workers' compensation claim for a wrongful death situation which, like *Zuber*, involved no future medical payments. The *In re Estate of Dierkes* court neither ruled, nor was it asked to rule, on the issue of attorney fees for suspended future medical expenses. Thus, we find Bayer's reliance on *In re Estate of Dierkes* to be unavailing in his attempt to analogize its analysis to the facts of this case.

¶ 49    As we have already determined, because the plain language of the Workers' Compensation Act does not require an employer to pay attorney fees on suspended future medical expenses, we find that Area owed no obligation to pay 25% attorney fees on Bayer's suspended future medical expenses under the Workers' Compensation Act. Though Illinois courts have not specifically addressed the issue at bar, we note that our sister state, Indiana, when faced with the same issue, held that an employer in a workers' compensation claim was not required to pay attorney fees to an injured worker's attorneys on future medical expenses that the employer would have paid but for the third-party tort action. See *Spangler, Jennings & Dougherty P.C. v. Indiana Insurance Co.*, 729 N.E.2d 117 (Ind. 2000) (finding that future

medical expenses were part of the verdict that attorneys had won for claimant and upon which attorneys negotiated postverdict settlements, and attorneys were not entitled to double recovery of attorney fees for the same damages).

¶ 50   While we do not necessarily adopt *Spangler*'s precise reasoning in reaching this conclusion, we find it instructive. Similar to the injured worker in *Spangler*, Bayer is a quadriplegic whose medical expenses will be ongoing. Although the jury in this case awarded Bayer about $20 million ($25 million - 20% contributory negligence = $20 million) for the present cash value of Bayer's future medical expenses, which was reduced in an overall posttrial settlement, this alone cannot be a basis upon which to impose attorney fees against the employer for suspended future medical expenses under the Workers' Compensation Act. See generally *Cherney v. Soldinger*, 299 Ill. App. 3d 1066, 1072 (1998) ("[s]tatutes that are in derogation of the common law will be strictly construed and nothing will be read into such statutes by intendment or implication"); *Kolacki v. Verink*, 384 Ill. App. 3d 674 (2008) (the Workers' Compensation Act establishes system of liability without fault, in derogation of the common law, where traditional common law defenses available to employer are abrogated in exchange for prohibition of common lawsuits against employer). Thus, we hold that the circuit court erred, in its July 18, 2013 order, in ruling that Area was required to pay 25% attorney fees to Bayer's counsel for suspended future medical expenses. Accordingly, in light of our holding, we reject Bayer's argument for the imposition of sanctions against Area under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) (sanctions for frivolous appeals or other action not taken in good faith or for an improper purpose).

¶ 51   For the foregoing reasons, we affirm in part and reverse in part the judgment of the circuit court of Cook County.

¶ 52   Affirmed in part; reversed in part.