2020 IL App (1st) 192380-U

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

SECOND DIVISION
December 22, 2020

No. 1-19-2380

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| SANDRA KLEIN-KOZIOL, as Special Administrator of the Estate of Timothy Koziol, Deceased, | ) ) ) | |
| Plaintiff, | ) ) | Appeal from the Circuit Court of |
| v. | ) ) | Cook County |
| M-J-T-J CONTRACTORS & BUILDERS, INC., an Illinois Corporation, KEELEY CONSTRUCTION, INC., an Illinois Corporation, and BENSENVILLE 1, LLC, c/o HAMILTON PARTNERS, INC., an Illinois Corporation, | ) ) ) ) ) | No. 17 L 2370 The Honorable Moira S. Johnson, Judge Presiding. |
| Defendants | ) ) | |
| (M-J-T-J Contractors & Builders, Inc., and Keeley Construction, Inc., Defendants and Third-Party Plaintiffs-Appellants; William T. Connelly d/b/a Connelly Electric Company, Third-Party Defendant-Appellee). | ) ) ) ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justice Cobbs concurred in the judgment.
Justice Pucinski dissented.

**ORDER**

¶ 1    *Held:*   Trial court did not abuse its discretion in finding that settlement between plaintiff and third-party defendant was in good faith and dismissing contribution claims against third-party defendant.

¶ 2    The defendants and third-party plaintiffs, M-J-T-J Contractors & Builders, Inc. (M-J-T-J Contractors) and Keeley Construction, Inc. (collectively non-settling defendants), appeal the trial court's finding that the settlement between the plaintiff, Sandra Klein-Koziol, as Special Administrator of the Estate of Timothy Koziol, deceased, and the third-party defendant, William T. Connelly d/b/a Connelly Electric Company (Connelly Electric), was in good faith for purposes of the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 2018) (Contribution Act)), and its dismissal of their claims for contribution against Connelly Electric. For the reasons that follow, we affirm the order of the trial court.

¶ 3                                I. BACKGROUND

¶ 4    On September 8, 2015, Timothy Koziol was working as an electrician at the jobsite of an industrial construction project in Bensenville, Illinois. He was operating a scissor lift that was extended approximately 20 to 25 feet above the ground when one of its wheels went into an exposed "box-out" hole on the concrete floor of the jobsite. This caused the extended scissor lift to tip and fall over, which in turn caused Koziol to fall out of it and strike his head on the concrete floor. Koziol sustained severe injuries in that incident that resulted in his death.

¶ 5    On March 7, 2017, the plaintiff filed this action for Koziol's wrongful death. The operative second amended complaint asserts various theories of negligence against three defendants: (1) M-J-T-J Contractors, the subcontractor on the project that had poured the concrete floor on which the incident occurred, (2) Keeley Construction, the project's general contractor, and (3) Bensenville 1, LLC c/o Hamilton Partners, Inc. (Hamilton Partners), the owner of the premises.

¶ 6    On August 30, 2017, Keeley Construction filed a third-party complaint against Connelly Electric, which was Koziol's employer. In count I, for breach of contract, Keeley Construction alleged that Connelly Electric had breached its contractual obligation to maintain commercial

general liability insurance naming Keeley Construction as an additional insured during the term of the contract at issue. (Count I is not involved in this appeal.) In count II, for contribution, Keeley Construction alleged that if it was found liable in tort to the plaintiff, then Connelly Electric would be liable to Keeley Construction for contribution, based on Connelly Electric's negligence in failing to inspect the area where the plaintiff was working at the time of the occurrence, failing to provide the plaintiff with a safe location in which to work, failing to warn the plaintiff of known conditions existing on the subject premises, and failing to train and instruct the plaintiff on how to perform his work in a safe manner.

¶ 7    Connelly Electric sought and obtained multiple extensions of time to answer or otherwise plead in response to Keeley Construction's third-party complaint. Then, on March 28, 2018, instead of filing an answer or other pleading directed at the third-party complaint, it filed a motion to dismiss count II of the third-party complaint with prejudice and for a finding that it had entered into a good-faith settlement with the plaintiff under the Contribution Act. 740 ILCS 100/2 (West 2018). In an amended version of that motion filed the following week, Connelly Electric alleged that, following arm's-length negotiations, it had entered into an agreement with the plaintiff to secure the dismissal of Keeley Construction's third-party claim against it in exchange for (1) payment to the plaintiff of $10,000 in "fresh money" (*i.e.*, money that was in addition to what had already been paid in Koziol's workers' compensation claim) that the plaintiff would have no obligation to repay as part of the workers' compensation lien, and (2) a conditional waiver of the workers' compensation lien by Connelly Electric's workers' compensation insurer.

¶ 8    That conditional lien waiver provided that, "should the underlying litigation be settled before verdict," then Connelly Electric and its workers' compensation insurer would accept "a net thirty percent (30%) of the gross settlement proceeds up to full satisfaction of its workers' compensation

lien," which totaled $903,232.31.[1] However, "[s]hould this matter be tried to verdict in [the plaintiff's] favor," then Connelly Electric and its workers' compensation insurer "shall be entitled to recover their workers' compensation lien pursuant to 820 ILCS 305/5(b) [(West 2018)] from said verdict proceeds."

¶ 9       On August 21, 2018, initial responses in opposition to the motion for good-faith finding and dismissal of count II were filed on behalf of all three defendants.[2] On September 12, 2018, Connelly Electric filed its reply brief. On November 29, 2018, the matter proceeded to an initial hearing before the trial court. At that hearing, the trial court noted that the defendants' responses had indicated that they required limited discovery to adequately respond to the motion for good-faith finding. The defendants' attorneys indicated that they required written discovery responses and at least one deposition of a representative of Connelly Electric. The trial court stated that it would allow that. There was further colloquy at the hearing about the extent to which discovery would pertain to the merits of the case as opposed to issues of fraud, collusion, or wrongful conduct in the settlement itself. The trial court stated that it would allow the defendants to conduct some discovery into the merits of the case, because of the preliminary stage at which the settlement had occurred. The trial court also stated that it was not going to limit in advance what the defendants could ask, but instead it would entertain any objections by Connelly Electric to the defendants' requests in discovery.

¶ 10      Discovery was propounded to Connelly Electric, and the case was continued several times

---

[1] In the situation of a settlement before verdict, the plaintiff waived any right to reduce this amount to account for statutory attorney fees or the employer's *pro rata* share of costs. See 820 ILCS 305/5(b) (West 2018).

[2] M-J-T-J Contractors did not have a third-party complaint for contribution pending against Connelly Electric until March 7, 2019, when the trial court granted its emergency motion for leave to file such a pleading. It does not appear that Hamilton Partners ever filed any third-party complaint against Connelly Electric, and it is not a party to this appeal.

on discovery issues. In March 2019, two motions to compel were filed by the defendants pertaining to objections that Connelly Electric had raised to the interrogatories and production requests they propounded. The motions to compel were fully briefed, and on May 10, 2019, following argument (the transcript of which is not part of the record on appeal), the trial court entered a detailed written order ruling on each objection raised by Connelly Electric to the written discovery. The trial court further conducted an *in camera* inspection of documents claimed by Connelly Electric to be privileged from discovery, and on August 12, 2019, it sustained Connelly Electric's amended privilege log. The trial court's order from that date also granted the defendants leave to amend their responses to Connelly Electric's motion for good-faith finding.

¶ 11        In the amended response to the motion for good-faith finding by Keeley Construction and Hamilton Partners, in which M-J-T-J Contractors later joined, the defendants argued that, by providing for a payment of only $10,000 in fresh money without a waiver of the workers' compensation lien, the proposed settlement was structured in a way that deprived the non-settling defendants, at the outset of the case, of their right to obtain contribution from Connelly Electric in an amount that was proportional to the potentially significant share of liability that Connelly Electric had for Koziol's death. They argued that, because the settlement provided that Connelly Electric would pay only $10,000 while retaining its worker's compensation lien, the settlement was illusory, as Connelly Electric would essentially recoup that $10,000 when the workers' compensation lien was reimbursed. They also argued that the effect of the settlement would be that, in the event of a verdict against the non-settling defendants, they would be entitled to a setoff of only $10,000 from the amount of the verdict; by contrast, if the workers' compensation lien had been waived as part of the settlement, then they could be entitled to a setoff of up to the $903,232.31 in workers' compensation benefits that the plaintiff was not required to repay.

¶ 12    Additionally, the defendants argued that the $10,000 settlement was not reflective of Connelly Electric's potential contribution liability, but rather it was a nominal amount for a case involving the wrongful death of a 53-year-old electrician earning $88,000 a year, survived by a wife and three minor children. They asserted that Connelly Electric had significant means to contribute to a settlement, including $2 million in liability insurance and an umbrella policy with a $15 million limit. They asserted that the contract between Keeley Construction and Connelly Electric provided that Connelly Electric's potential contribution liability was not capped at the amount of its worker's compensation lien. They pointed out that Connelly Electric had agreed in its contract with Keeley Construction to " 'furnish all labor materials, tools, supplies, equipment, services, facilities, supervision, administration, and other things necessary or incidental to the proper and complete performance and acceptance of the Work' for the project." Citing the report of the Occupational Safety and Health Administration (OSHA) investigation of the incident, the defendants pointed out that Connelly had provided Koziol with "training in operating the forklift." Finally, they asserted that Keeley Construction "was not responsible for, and did not control, the protocols, procedures, supervision, and contractor safety of the premises as it was left to each subcontractor to determine its own means of implementing protocols, supervision, and safety."

¶ 13    In reply, Connelly Electric argued that the defendants, even after obtaining discovery, had failed to point to any evidence of collusion, unfair dealing, or wrongful conduct on the part of the settling parties. It further argued that the defendants had failed to cite any evidence suggesting that Connelly Electric had any liability for the incident that led to Koziol's death. It pointed out that the OSHA inspection report relied upon by the defendants had assigned no liability to Connelly Electric, proposed no citations against it, and found that the scissor-lift training it provided to employees " 'was sufficient for OSHA standards.' " It cited a letter by the OSHA area director

stating, "Our investigation could not establish that the employer had knowledge of Mr. Koziol operating the scissor lift in the area at the time of the incident and that he was exposed to the hazard." It argued that $10,000 was sufficient consideration for the settlement to be in good faith. Further, it denied that the defendants' characterization of the $10,000 settlement as money that would be refunded by the workers' compensation lien. It argued that a lien waiver was not required for a settlement to be in good faith. It argued that the defendants' assertion that its contribution liability was $903,232.31 or more was "wishful thinking" that the defendants failed to support by affidavit, demand letter, or other evidence. It argued that the trial court did not need to determine the merits of the tort case or rule on the respective liabilities of the parties to decide whether the settlement was in good faith. And it argued that the "mechanism of the potential lien reduction" if the case settled before verdict had the effect of promoting the overall settlement of the case between the plaintiff and the defendants, and therefore the agreement advanced an important purpose of the Contribution Act.

¶ 14    On October 22, 2019, the matter proceeded to oral argument, at which the parties made arguments substantially similar to those in their respective briefs as set forth above. At the conclusion of the hearing, the trial court stated that, given the settlement's provision that the workers' compensation lien would be in full force and effect if the case went to verdict, it found that the $10,000 payment (which the court stated it did not find to be "fresh" money) was sufficient in light of the provision that the workers' compensation reimbursement would be 30% in the event of a settlement. The court stated that the defendants who remained at the time of verdict would be entitled to a setoff of $10,000. Therefore, the trial court determined that the settlement was in good faith based on the fact that "there is no evidence of any kind of fraud or collision, and we don't have any evidence of a substantial *pro rata* share of fault in this case." It therefore dismissed with

prejudice count II of Keeley Construction's third-party complaint against Connelly Electric and M-J-T-J Contractors' third-party complaint against Connelly Electric, and it barred any claim for contribution by Hamilton Partners against Connelly Electric. It also made a finding that no just reason existed to delay either enforcement or appeal of its order. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Keeley Construction and M-J-T-J Contractors filed a timely notice of appeal.

¶ 15                                    II. ANALYSIS

¶ 16        The non-settling defendants argue on appeal that the trial court abused its discretion in finding that the settlement between the plaintiff and Connelly Electric was in good faith, because it failed to equitably apportion damages among the tortfeasors and because the totality of the circumstances demonstrates that its finding of good faith was unreasonable and arbitrary.

¶ 17        The Contribution Act provides that where two or more persons are subject to tort liability arising out of the same injury or wrongful death, there is a right of contribution among them. 740 ILCS 100/2(a) (West 2018). However, a tortfeasor is discharged from liability for contribution to the other tortfeasors if that tortfeasor enters into a "good faith" settlement with the injured party, although the non-settling tortfeasors are then entitled to a setoff in the injured party's claims against them for the amount of that settlement. *Id.* § 2(c), (d). The Contribution Act seeks to promote two important public policies: (1) the encouragement of settlements, which it promotes by providing that a tortfeasor who enters into a good-faith settlement with the plaintiff is discharged from any contribution liability to a non-settling tortfeasor; and (2) the equitable apportionment of damages among tortfeasors, which it promotes by creating a right of contribution among tortfeasors and by providing that the amount a plaintiff recovers on a claim against a non-settling tortfeasor will be reduced or set off by the amount of the settlement. *Antonicelli v. Rodriguez*, 2018 IL 121943, ¶ 13.

¶ 18     The only limitation that the Contribution Act places on the right to settle is that it be in "good faith." *Id.* ¶ 14. The Contribution Act does not define "good faith" or provide any procedural guidelines as to how or when a trial court should make a good-faith determination. *Johnson v. United Airlines*, 203 Ill. 2d 121, 128 (2003). Whether a settlement satisfies the requirement of good faith is a matter left to the discretion of the trial court, based on the trial court's consideration of the totality of the circumstances. *Antonicelli*, 2018 IL 121943, ¶ 23. While no single precise formula exists for determining what constitutes good faith that is applicable in every case, a settlement will not be found to be in good faith where it conflicts with the terms of the Contribution Act, where it is inconsistent with the important public policies sought to be promoted by the Contribution Act, or where the settling parties engaged in wrongful conduct, collusion, or fraud. *Id.* A court deciding whether a settlement was negotiated in good faith must strike a balance between the two important policies of encouraging settlements and promoting the equitable apportionment of damages among tortfeasors. *Johnson*, 203 Ill. 2d at 133. A trial court's finding that a settlement was made in good faith is a matter within the trial court's discretion, and we will reverse a finding of good faith only if the trial court abused its discretion. *Antonicelli*, 2018 IL 121943, ¶ 25.

¶ 19     In the evaluation of whether a settlement is in good faith, the settling parties carry the initial burden of making a preliminary showing of good faith. *Johnson*, 203 Ill. 2d at 132. This requires at a minimum that the settling parties show the existence of a legally valid settlement agreement. *Id.* However, not all legally valid settlement agreements satisfy the good-faith requirement of the Contribution Act, and therefore other factual evidence may be necessary before the court may initially determine whether a settlement is fair and reasonable in light of the policies underlying the Contribution Act. *Id.* Once the settling parties make a preliminary showing of good faith, the

burden shifts to the parties challenging the settlement to prove the absence of good faith by a preponderance of the evidence. *Id.* The trial court is in the best position to decide what type of hearing is necessary to fully adjudicate the issue of good faith. *Id.* at 136. Likewise, is within the trial court's discretion to determine whether additional discovery or other materials are necessary to reach a finding of good faith. *Snoddy v. Teepak, Inc.*, 198 Ill. App. 3d 966, 969 (1990). A trial court is not required to conduct an evidentiary hearing to determine the tortfeasors' relative culpability, and the trial court does not need to decide the merits of the tort case or rule on the respective liabilities of the parties before making a good faith determination. *Johnson*, 203 Ill. 2d at 139. A court is capable of ruling on good faith without a precise determination of the overall damages suffered by the plaintiff or the settling tortfeasors' proportionate liability. *Id.*

¶ 20     Disparity between the amount of the settlement and the amount initially sought by the plaintiff is not an accurate measure of good faith, and the small amount of a settlement alone does not require a finding of bad faith. *Id.* at 136-37. Rather, "[t]he amount of a settlement must be viewed in relation to the probability of recovery, the defenses raised, and the settling party's potential legal liability." *Id.* at 137. Also, in a situation such as this where the settlement is between a plaintiff and an employer sued as a third-party defendant, the settlement will not be found to lack good faith merely because the employer or its insurance company has a workers' compensation lien that is not waived as part of the settlement. *Romack v. R. Gingerich Co.*, 314 Ill. App. 3d 1065, 1069 (2000). Rather, adequate consideration exists where a plaintiff-employee receives cash in excess of the workers' compensation benefits received for which the employer or insurance company retained its lien. *Id.*

¶ 21     The non-settling defendants' overall argument on appeal is that the settlement between the plaintiff and Connelly Electric was not in good faith because it failed to promote "the equitable

apportionment of damages among tortfeasors," which is one of the two important policies underlying the Contribution Act, and that the totality of the circumstances and settlement terms demonstrated that the trial court's finding of good faith was unreasonable and arbitrary. The non-settling defendants' arguments are comprised of several largely interrelated aspects, and we summarize these as follows.

¶ 22     One aspect of their argument involves the timing of the settlement. Here, the plaintiff and Connelly Electric reached a settlement at the outset of the case, before Connelly Electric had even filed an answer or other pleading in response to the third-party complaints filed against it. (The non-settling defendants repeatedly point out that Connelly Electric obtained multiple extensions of time to answer or otherwise plead and never did so.) The non-settling defendants contend that a settlement at this preliminary juncture deprived them of information about what defenses Connelly Electric had to liability and an opportunity to conduct meaningful discovery into Connelly Electric's liability for the incident that led to Koziol's death. Relatedly, they contend that the trial court improperly made the good-faith determination based on a record that lacked adequate information for it to evaluate Connelly Electric's legal liability, its defenses, and the probability of recovery against it. Although the trial court allowed them limited discovery, they argue that its sustaining of objections by Connelly Electric to discoverable facts and evidence precluded them from conducting the necessary investigation into the settlement negotiations and the involvement that Connelly Electric had in the training and supervision of its employees.

¶ 23     A second aspect of the non-settling defendants' argument involves the $10,000 payment by Connelly Electric to the plaintiff. The non-settling defendants contend that this is a nominal settlement amount for a case involving the wrongful death of a 53-year-old electrician survived by a wife and minor children, and indeed the trial court characterized this a "cost of defense"

settlement. Thus, they argue, it is not reflective of Connelly Electric's actual exposure or liability. They point out that $10,000 is only about 1% of Connelly Electric's workers' compensation lien, which is $903,232.31, and they therefore argue that Connelly Electric is obtaining a discharge from any contribution liability to them for a sum reflecting approximately 1% of its potential liability. They further contend that $10,000 actually reflects less than 1% of its potential contribution liability because its subcontract with Keeley Construction contains a "*Kotecki* waiver" whereby its contribution liability is not capped at the amount of its workers' compensation lien.[3]

¶ 24    A third aspect of the non-settling defendants' argument involves the fact that Connelly Electric did not waive its workers' compensation lien as part of the settlement agreement, instead retaining the right to be reimbursed at 30 percent of the amount of any settlement, or under the terms of the statute if the case is tried to verdict. They argue that this has the effect of making the $10,000 payment illusory, because Connelly Electric is likely to recoup this money many times over when it recovers on its workers' compensation lien in a later settlement or verdict. They argue that it is thus a $10,000 loan instead of a settlement, and therefore it is not a good faith settlement. They argue that if Connelly Electric had waived its workers' compensation lien, then the non-settling defendants would be entitled to a setoff of an amount up to at least $903,232.31, whereas by retaining its lien, they are limited to a setoff of only $10,000. Thus, they argue, the settlement unfairly allowed Connelly Electric to shift its entire risk of liability onto them by depriving them of their right to contribution and limiting them to a nominal setoff, while it paid only nominal consideration and retained the right to fully recover under its lien. They also contend that Connelly

---

[3] In *Kotecki v. Cyclops Welding Corp.*, 146 Ill. 2d 155, 165 (1991), the supreme court held that the maximum liability that a plaintiff's employer has in a third-party action for contribution is limited to its workers' compensation liability to its employee. However, through a contractual provision commonly referred to as a "*Kotecki* waiver," an employer may waive this limitation and become liable for its full *pro rata* share of contribution. See *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 558 (2007).

Electric's "sliding scale" right to recover 30 percent of any settlement proceeds does not have the effect of promoting the overall settlement of the case, since Connelly Electric can still recover the full amount of its lien if the plaintiff obtains a settlement in excess of $2.7 million.

¶ 25    We have reviewed the briefs and discovery documents submitted to the trial court, along with the arguments made to the trial court at the hearings on the motion. After doing so and also considering the parties' arguments in this court, we conclude that the trial court did not abuse its discretion in determining that the settlement agreement between the plaintiff and Connelly Electric was in good faith. Regarding the timing of the settlement and the information available to the non-settling defendants and the trial court, the transcript of the hearing of November 29, 2018, reveals that the trial court recognized the concern that the purported settlement had occurred at a preliminary stage of the case, before the parties had engaged in any meaningful discovery. As such, the trial court allowed the non-settling defendants to conduct discovery that was not limited merely to issues surrounding the settlement negotiations (which Connelly Electric had argued that the discovery should be limited to), but it allowed some discovery into the merits of the claims against Connelly Electric. The trial court also indicated that it would allow the non-settling defendants to take a deposition of at least one representative of Connelly Electric, which is all that they suggested at that hearing. There is no indication in the record that they in fact deposed anyone from Connelly Electric. While the non-settling defendants complain about the fact that the trial court later sustained some of Connelly Electric's objections to the written discovery, they raise no claim in this court that the trial court abused its discretion in doing so. Likewise, the non-settling defendants make no claim that the trial court abused its discretion by limiting the amount of discovery it allowed them to obtain prior to ruling on the motion for good-faith finding. See *Snoddy*, 198 Ill. App. 3d at 969 (allowance of additional discovery before making a finding of

good faith is within the trial court's discretion).

¶ 26    Given the discovery allowed by the trial court, we find the determinative factor to be that the non-settling defendants are unable to show through evidence, affidavits, or even attorney arguments that there was some act or omission on the part of Connelly Electric suggesting that it had any liability for the incident that led to Koziol's death. As we noted above, the trial court explained that one of the principal reasons for its finding that the settlement was in good faith was that "we don't have any evidence of a substantial *pro rata* share of fault in this case" on the part of Connelly Electric. This was an accurate statement by the trial court. Absent any ability on the part of the non-settling defendants to point to some act or omission suggesting liability on the part of Connelly Electric, we cannot conclude that a settlement for $10,000 and a conditional waiver of its workers' compensation lien failed to reflect the probability of recovery against Connelly Electric, its defenses, or its potential legal liability, or that it otherwise failed to equitably apportion damages among the tortfeasors. See *Johnson*, 203 Ill. 2d at 137.

¶ 27    Initially, we find that the information before the trial court was adequate to support a preliminary showing of good faith by the settling parties. *Id.* at 132. The trial court had before it a legally valid settlement agreement, setting forth the terms to which the plaintiff and Connelly Electric had agreed. Additionally, at the hearing on October 22, 2019, Connelly Electric's attorneys argued to the trial court that the discovery conducted by the non-settling defendants had shown no evidence of liability on the part of Connelly Electric. They cited the report of the OSHA investigation showing no findings of any safety or training violations by Connelly Electric. That OSHA investigation report, which was before the trial court, indicated that Koziol worked as a foreman for Connelly Electric, that he had been alone in the building when the incident occurred, and that nobody else had been aware that he was operating the scissor lift in the area at issue or

was exposed to a hazard. The OSHA report also indicated that Connelly Electric had provided documents to OSHA showing that Koziol had received training in the use of a scissor-lift. It indicated that other employees of Connelly Electric had been interviewed about their scissor-lift training and that the training was sufficient for OSHA standards. Included with the report was a letter from the OSHA area director stating, "Our investigation could not establish that the employer had knowledge of Mr. Koziol operating the scissor lift in the area at the time of the incident and that he was exposed to the hazard." The report and letter indicated that no citations had been issued by OSHA against Connelly Electric. Although we agree with the non-settling defendants that the OSHA report would likely be inadmissible at trial, we see no bar to the trial court's reliance upon it in evaluating the good faith of a settlement. See *Stickler v. American Augers, Inc.*, 303 Ill. App. 3d 689, 694 (1999) (citing liability conclusions of OSHA investigation as a basis for finding that trial court erred in finding settlement was in good faith).

¶ 28      Because the settling parties made a sufficient initial showing of good faith, the burden shifted to the non-settling defendants to prove the absence of good faith by a preponderance of the evidence. *Id.* Here, based on the fact that they were unable to point to any act or omission on the part of Connelly Electric suggesting it bore some liability for the incident at issue, the trial court did not abuse its discretion in determining this burden had not been met. In their briefs in the trial court and before this court, the non-settling defendants cite various provisions in the contract between Connelly Electric and Keeley Construction. For example, they cite Connelly Electric's contractual agreement with Keeley Construction to " 'furnish all labor materials, tools, supplies, equipment, services, facilities, supervision, administration, and other things necessary or incidental to the proper and complete performance and acceptance of the Work.' " They cited Connelly Electric's contractual agreement that it " 'has inspected the job site and is acquainted

with the actual conditions and is not relying on any representations of [Keeley Construction] regarding the conditions of the site.' " They cite its agreement that Keeley Construction's coordination and scheduling direction would not relieve Connelly Electric from responsibility " 'for the Work, including, but not limited to responsibility for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work.' " Finally, they cite its contractual agreement " 'that safety and the prevention of accidents to workers engaged in Subcontract Work is solely its responsibility.' " While we do not dispute that these provisions could give rise to tort liability on the part of Connelly Electric if it failed to fulfill these duties under the contract, what is absent in this case is evidence or argument pointing to some act or omission by Connelly Electric that in fact violated these contractual duties or otherwise potentially amounted to negligence. The mere existence of these contractual provisions combined with the speculative assertion that they may have been violated in some unspecified way is not sufficient to show that Connelly Electric bore some liability in this case, such as to show that a settlement for $10,000 and a conditional lien waiver failed to adequately reflect the probability of recovering against Connelly Electric, its defenses, its potential liability, or other inequitable apportionment of damages among the tortfeasors. See *id.* at 137.

¶ 29    The failure to point to some act or omission potentially giving rise to liability on the part of Connelly Electric distinguishes this case from other cases in which the appellate court has reversed trial courts' findings of good faith on the basis that a settlement conflicted with the Contribution Act's policy of encouraging the equitable apportionment of damages among tortfeasors. In *Stickler*, 303 Ill. App. 3d at 694, relied upon by the non-settling defendants, this court found a settlement was not in good faith in part because the employer of the plaintiff's decedent was seeking to be released from contribution liability for relatively nominal consideration despite

evidence that OSHA had "conducted an investigation and placed full culpability for the accident" on the decedent's employer. In *Associated Aviation Underwriters, Inc. v. Aon Corp.*, 344 Ill. App. 3d 163, 177-78 (2003), a settlement for $6 million in an action seeking $28 million in property damage subrogation was found not to be in good faith, where the released defendants' "settlement payment was grossly disproportionate to their relative liability" based on a jury's determination in a related lawsuit that they were 90% liable for the aircraft accident at issue. In *Warsing v. Material Handling Services, Inc.*, 271 Ill. App. 3d 556, 561 (1995), a $1,000 settlement in a wrongful death case was found not to be in good faith where the court found that the "evidence supports [the non-settling defendant's] assertion that [the settling third-party defendant's] use of the forklift was the primary cause of the accident." By contrast, this court has affirmed the good faith of settlements for relatively nominal consideration where there is no evidence of a negligent act or omission by the settling tortfeasor. *Johnson v. Johnson*, 386 Ill. App. 3d 522, 555 (2008) (affirming good faith of $7,500 settlement between father named as third-party defendant and his plaintiff-daughter, where there was no evidence father acted negligently in failing to supervise daughter).

¶ 30 We further reject the argument that the settlement here was structured in such a way as make the $10,000 payment "illusory" or to make it an improper loan instead of a settlement. Courts evaluating the good faith of settlements have recognized the validity of contingent lien waivers, whereby a settling third-party defendant with a workers' compensation lien agrees to waive all or part of its lien with respect to a settlement while retaining the right to recover under its lien in the event the case proceeds to verdict. See, e.g., *Bayer v. Panduit Corp.*, 2015 IL App (1st) 132252, ¶ 31, *rev'd in part on other grounds*, 2016 IL 119553; *Romack*, 314 Ill. App. 3d at 1068-70; *Cleveringa v. J.I. Case Co.*, 192 Ill. App. 3d 1081, 1085-87 (1989). Nothing about such agreements alone indicates an absence of good faith.

¶ 31    Here, the $10,000 in cash that Connelly Electric is paying to the plaintiff as part of the settlement is separate from and additional to the benefits it paid as part of Koziol's workers' compensation claim. Thus, regardless of how this case later resolves, Connelly Electric will have paid the plaintiff $10,000 more than it has the ability to recoup through its workers' compensation lien. If the case resolves through a defense verdict, Connelly Electric will still have paid the plaintiff $10,000 in addition to its workers' compensation obligations that it cannot recover. If the case resolves through settlement before verdict for an amount that allows for full satisfaction of the workers' compensation lien under the terms of the settlement agreement, then Connelly Electric will still have paid the plaintiff $10,000 more than it can recover. Every potential resolution between these two ends of the spectrum likewise results in Connelly Electric having paid the plaintiff at least $10,000 more than the percentage it can recover under its workers' compensation lien pursuant to the terms of the settlement agreement. As such, we do not find the $10,000 payment to be an "illusory" settlement. See *Bayer*, 2015 IL App (1st) 132252, ¶ 31 (rejecting similar argument that employer's right to recover under conditional lien waivers made settlement "illusory"). Similarly, because the $10,000 payment is separate from and additional to the workers' compensation benefits paid, and it is not money that must be repaid to Connelly Electric under the workers' compensation lien or otherwise, we reject the non-settling defendants' argument that this is an improper loan as opposed to a settlement. *Ross v. Illinois Central R.R. Co.*, 2019 IL App (1st) 181579, ¶ 33; *Cleveringa*, 192 Ill. App. 3d at 1087.

¶ 32    Finally, we reject the non-settling defendants' argument that the settlement agreement's provision that Connelly Electric will accept 30% of any gross settlement proceeds up to full satisfaction of its workers' compensation lien if settlement occurs before verdict contravenes the policy promoted by the Contribution Act of promoting the overall settlement of the entire

litigation. See *Ross*, 2019 IL App (1st) 181579, ¶ 34 (citing *In re Guardianship of Babb*, 162 Ill. 2d 153, 178 (1994)). The non-settling defendants argue that this provision has the effect of placing them "in a difficult position with an extremely large lien looming in the back that the parties will have to account for if attempting to resolve." This is not an accurate characterization. Rather, this provision of the settlement agreement relieves the plaintiff and the non-settling defendants from having to "account for" a lien in excess of $900,000 if they attempt to settle the case in the future. Because of this provision, they will be able to engage in settlement negotiations knowing in advance that, regardless of the amount for which the case settles, it will be sufficient for the plaintiff to satisfy the obligation to reimburse the workers' compensation lien while still receiving at least 70% of the settlement funds. By enabling this, the settlement provision at issue can be of benefit to all parties in promoting the overall settlement of this ligation in the future.

¶ 33    For the reasons set forth above, we hold that the trial court did not abuse its discretion in finding that the settlement between the plaintiff and Connelly Electric was in good faith. We have reviewed the remaining arguments raised by the non-settling defendants against the good-faith nature of this settlement and find no merit to them.

¶ 34    Before concluding, however, we do wish to emphasize that, in general, we would not encourage a settlement at the very outset of a construction negligence case between a plaintiff and a third-party defendant employer that retains a workers' compensation lien. First, we acknowledge that the potential exists in this context for collusion or bad faith. A plaintiff and an employer with a workers' compensation lien named as a third-party defendant are not necessarily litigation adversaries in the same way that other parties are. Frequently, both will have an interest in maximizing the liability of the defendants while minimizing the liability of the employer, so as to obtain a sufficient recovery to repay the workers' compensation lien and also compensate the

plaintiff for the damages sustained. The employment relationship may also present incentives to settle that are unrelated to the merits of the litigation. Also, this case illustrates how a settlement between them at the outset of the case can deprive the non-settling defendants and the trial court of discovery into the employer's liability and defenses, and thus the normal discovery process is upended while the motion for good-faith finding is resolved. Indeed, it does not appear to us that much discovery has actually occurred in this case despite the fact that it has been pending for almost four years. It would have been better for all parties involved to proceed with some discovery and present the motion for good faith finding at a time when more information was available. However, as discussed above, we believe that the trial court here was sensitive to these concerns, handled the matter appropriately, and ultimately made a finding of good faith that was not an abuse of discretion.

¶ 35                                    III. CONCLUSION

¶ 36        The trial court's order finding that the settlement between the plaintiff and third-party defendant Connelly Electric was in good faith and dismissing the claims for contribution against Connelly Electric is affirmed.

¶ 37        Affirmed.

¶ 38        JUSTICE PUCINSKI, dissenting:

¶ 39        With the greatest respect to my colleagues, I dissent.

¶ 40        The majority says that "In general, we would not encourage a settlement at the very outset of a construction negligence case between a plaintiff and a third party defendant employer that retains a workers' compensation lien." And then the majority does just that.

¶ 41        There was virtually no discovery. The OSHA report is not evidence. Connelly did retain its workers compensation lien. Without full discovery there can be no true evaluation of the

employer's liability and/or defenses. As the majority states: "the normal discovery process was upended" by this very early settlement.

¶ 42    The majority blames the defense for not providing proof or even adequate pleadings for its claims that the settlement was not in good faith.

¶ 43    Without discovery the defense cannot provide that proof or prepare adequate pleadings.

¶ 44    To put the defense in a "catch-22" is, I believe, is a mistake.

¶ 45    I would reverse the circuit court's decision to find that the settlement between plaintiff and third-party defendant was in good faith and remand this case for further discovery.